[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON HEARING IN DAMAGES
On January 1, 1995, plaintiff was retained by defendant pursuant to a written contract for the purpose of providing public relations services in her capacity as a professional gun shooter, in connection with which she was expected to enter competitive shooting contests in various locations. This contract was renewed several times, the last one at issue in this case signed on October 6, 1998, for a 3-year period from January 1, 1999 through December 31, 2001. Defendant terminated the contract as of January 4, 2000 by letter dated January 26, 2000.
Plaintiff instituted this action to recover sums due her under the contract, potential bonus payments from which she was foreclosed, the value of guns and miscellaneous services which should have been furnished to her and reasonable attorney's fees.
On October 22, 2001, Judge Koletsky granted plaintiffs motion for summary judgment for liability as a result of the contract termination, but not as any liability for attorney's fees.
This court heard testimony on June 5 and July 10, 2002 and closing arguments on July 30, 2002. Subsequent motions to introduce additional testimony are denied.
Plaintiff claims she lost $35,000 each year for 2000 and 2001 by reason of payments due her under the contract, a bonus payment shortfall of $20,000 and a loss in receipt of guns, parts and services due her in the amount of $8,000.
In addition she claims attorney's fees and costs in the amount of $40,289, subsequently revised to $51,878, for which no liability was determined prior to this hearing in damages.
 I.
CT Page 15330-p
If an employee is wrongfully dismissed while working under a fixed term contract, e.g. three years, he may recover the salary due for the remainder of the term plus whatever fringe benefits or commissions could be reasonably expected, minus amounts earned elsewhere. § 8.03Litigating Wrongful Discharge Claims, West (1997-2001) § 8.09. Plaintiff is entitled to recover $70,000 for the two years remuneration due her under the contract.
 II.
Defendant has filed a special defense claiming plaintiff failed to mitigate her damages by failing to make reasonable efforts to secure employment in 2000 and 2001, most notably by failing to accept employment offered to her by the defendant in a period of negotiations which took place from February through May, 2000.
A wrongfully discharged employee's right to an award is limited by the doctrine of mitigation of damages and her failure to use reasonable diligence in reducing damages by seeking another comparable job may be considered in mitigating damages. Litigating Wrongful Discharge Claims, Paul H. Tobias (West) 2002 § 8.09. The period of back pay may terminate when there is an unconditional and bona fide offer of reinstatement to the same or equivalent position held under the contract. Canova v. NLRB, 708 F.2d 1498 (CA 9 1983). An offer of reinstatement does not limit liability of the employer unless the position offered complies with the terms of the breached contract. Clark,Boardman, Callaghan, Employment Coordinator (1995) § EP 29, 513;Drews v. Denver Recycling Co., 727 P.2d 1121 (Colo.App. 1986).
Plaintiff has objected to even consideration of the February — May, 2000 negotiations for possible reinstatement because they were made in the context of negotiations for possible settlement of claims between the parties and therefore barred by § 8-4 of our Rules of Evidence. Subject to this objection, this court permitted some evidence of these negotiations, including some draft contracts that were considered. It is clear, however, that these draft contracts involved terms different from the original contract, and that these negotiations never resulted in any agreement between the parties and never amounted to an unconditional offer to rehire the plaintiff under terms substantially identical to the original contract. Some important differences between the original contract and the draft offered to plaintiff were the reduction in shooting events, a new responsibility of editing a newsletter, and the elimination of an attorney's free clause, although this clause did appear in a new draft offered after plaintiff terminated negotiations. CT Page 15330-q
Nor has defendant produced any substantial evidence that plaintiff failed to make reasonable efforts to secure alternative employment in mitigation of damages by reason of turning down offers of other employment by the defendant employer whether made in the context of settlement negotiations or otherwise. In fact plaintiff obtained some alternative employment in 2001, as described below. It is therefore unnecessary to consider plaintiffs claim that such evidence is barred because it occurred in the context of privileged settlement negotiations, since there was never any unconditional offer to reinstate the original or similar contract.
 III.
Defendant claims further mitigation of damages because plaintiff was not required to incur certain travelling and lodging expenses which she ordinarily incurred as part of her employment. Colt was not obligated to reimburse her for these expenses under the contract but both parties agreed that sometimes it did. There was evidence that the plaintiff had submitted bills for reimbursement for two events in 1999 for $1,219 and $1,709 respectively, with vague evidence as to whether they were reimbursed but these appeared to be highly unusual. Plaintiff attempted to introduce other requests for reimbursement for plaintiffs expenses for much smaller amounts, but these were attached to an affidavit submitted after the close of evidence and not admissible.
Damages to the plaintiff should be reduced by her expenses saved in consequence of the breach of contract. Bead Chain Manufacturing Co. v.Saxon Products, Inc., 183 Conn. 266 (1981).
The court finds that $1,219 per event represented the more reasonable average because the $1,709 charge appears to be extraordinarily excessive. The court finds further that, on average, one half of the requests for reimbursements were honored. Based on a minimum of seven events a year, at an average cost of $1,219, half of which was reimbursed, it is found that over a two year period, plaintiff saved $8,540 in expenses which she would ordinarily have paid, and this amount should be applied in mitigation of her damages.
 IV.
Paragraph 9(a) of the contract provides for bonuses to be awarded to plaintiff if she won or placed in the first three of the various competitions she was engaged to enter, ranging from $1,000 to $3,000. Plaintiff claims $20,000 in lost bonuses based on a per year average of $10,000. Defendant argues that average amount of bonuses she earned over CT Page 15330-r the five years preceding 2000 was $6,450. The evidence of her bonuses received in the past five years is a more reliable indication of what she might have earned in 2000 and 2001, and she is awarded $12,900 for failed bonuses.
 V.
Defendant claims that moneys earned from other services, including sums received from Peachtree Realty in 2000 in the amount of $1,035 and from Glock in 2001, in the amount of $34,564.02 should be deducted from her recovery. The unusual nature of plaintiffs employment, mainly entering competitions, was that of a performer, and did not require any fixed period of time or hours. However, her alternate employment with Glock, a competitor to defendant, would have been barred by her contract with defendant and her compensation from Glock, in the amount of $34,564, should be deducted from her recovery. Such deduction is not opposed.
 VI.
Paragraphs 9(b), (c) and (d) provide for guns, parts and services to be provided by defendant to plaintiff during the course of her employment, which she did not receive. The evidence indicates that the value of the guns and parts that would have been provided to her in 2000 and 2001 was $8,000. However, it is not appropriate to credit her for guns and parts during the year she was employed by Glock which presumably provided her with other guns and parts for her use and keeping. Accordingly, she should be credited in the amount for $4,000 for the loss of these items.
 VII.
Plaintiff claims reasonable attorney's fees of $40,289 based on paragraph 10 of the terminated contract which states:
 In the event that the terminated party wishes to litigate whether a material default has occurred, the prevailing party in such litigation shall be entitled to recover reasonable attorneys fees and costs from the other parts. [sic].
While the various complaints filed, including the second revised complaint, do not specifically refer to Paragraph 10. they refer to the terminated contract dated October 6, 1998 and thus by inference to Paragraph 10. On August 15, 2000, defendant filed a motion to strike plaintiffs claims for attorney's fees and punitive damages but the file does not disclose any decision on this motion. CT Page 15330-s
Defendant argues that this clause comes into play only when the terminated party chooses to litigate a claim that she was terminated because she committed a material breach, whereas in this case it is undisputed that defendant terminated the contract without cause. However, defendant has never acknowledged that it owed plaintiff damages arising from its unjustified termination of the contract, instead arguing that its offer to rehire plaintiff nullified any of its obligations under the contract. No evidence was offered that defendant ever offered to pay any damages in consequence of the termination. Plaintiff was forced to initiate this litigation in order to recover the damages sustained by defendant's breach and asserted its claim for attorney's fees from the inception. Since this contract was drawn by defendant, any ambiguity in this clause should be resolved in favor of plaintiff. It is a fair conclusion that attorney's fees are awardable to the plaintiff, the prevailing party in this case.
At trial plaintiffs claims for $40,289 in attorney's fees was based on 64.5 hours of partner time at $300 per hour, $57.50 hours of associate time at $250 per hour; and $75.50 hours of paralegal time at $75 per hour. Subsequently, plaintiff revised these claims to 69.6 hours for partners, 87.5 hours for associates and 110.5 hours for paralegals, presumably for the addition of trial hours.
Taking into consideration average rates in Hartford County, the difficulty of the case as revealed by the file and the fact that this action resembled in some respects a collection action in which the principal debt was not contested, although a vigorous defense was raised based on mitigation of damages, the court has adjusted this claim as follows:
Partners — 50 hours @ $250/hour .............. $12,500
Associates — 50 hours @ $200/hour .............. 10,000
 Paralegals — 50 hours @ $50/hour ................ 2,500
$25,000 -------
No award is made for punitive damages other than this claim for attorney's fees under the contract.
 VIII.
In summary, plaintiff is entitled to recover damages in the amount of CT Page 15330-t $43,796, based on the following computation:
 Base pay $70,000 Lost bonuses 12,900 Guns and parts 4,000
$86,900
 Less Glock earnings 34,564 Unused travel 8,540 Net Damages $43,796
______
In addition, Plaintiff is awarded $25,000 for attorney's fees, for a total of $68,796.
 ____________ Wagner, JTR
CT Page 15330-u