129 N.J. Super. 449 (1974)
324 A.2d 71
SAMUEL SPORN, PLAINTIFF,
v.
CELEBRITY, INC., A BODY CORPORATE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 3, 1974.
*451 Mr. Barry D. Epstein for plaintiff (Messrs. Boardman & Epstein, attorneys).
Mr. Barry I. Croland for defendant (Messrs. Shavick, Stern, Schotz, Steiger & Croland, attorneys).
PETRELLA, J.C.C., Temporarily Assigned.
Plaintiff sued for wrongful discharge from his New York employment in violation of an alleged oral one-year employment contract and claimed damages of $9,750 for five months' salary and $700 as unreimbursed expenses. The jury found in favor of plaintiff on all issues, including the term of the contract being not more than one year.
Defendant moved pursuant to R. 4:49 and R. 4:50 on several grounds for a new trial and for certain other relief, including mitigation of damages as a matter of law, i.e. (1) reduction of the jury award by the amount of New York unemployment compensation benefits received by plaintiff, and (2) for deduction of federal withholding and social security taxes.[1] There was no jurisdictional issue presented and the applicability of New York law was not raised before or during trial. Defendant, after trial, argued that New York law applies to the question of offset or mitigation of damages on a New York unemployment contract.
(The issues raised on the motion for a new trial have been considered by the court and denied in an oral decision. *452 Except for the matters herein, the discussion of those issues has been omitted.)
One legal issue appears novel in New Jersey and warrants consideration. That is, whether the defaulting or breaching party to an employment contract can, in addition to the usual mitigation of damages, require, as a matter of law, abatement or mitigation by the amount plaintiff received from unemployment compensation. Application of the "collateral source rule" to funds received from unemployment compensation by a wrongfully discharged employee in a contract action does not appear in any New Jersey reported opinion and has been scantily commented on elsewhere.
Although Evid. R. 9(2) (a) would allow judicial notice of New York law, the court was not furnished with an adequate or timely basis for taking notice of New York law and has applied the law of the forum. Under Evid. R. 9(3) the court can apply New Jersey common law and public policy. See Donnelly v. United Fruit Co., 75 N.J. Super. 383, 397 (App. Div. 1962), aff'd 40 N.J. 61 (1963), and Breslin v. Liberty Mut. Ins. Co., 125 N.J. Super. 320, 326 (Law Div. 1973). Donnelly held that New Jersey law governed where an employee sued for wrongful discharge, and challenged the refusal of his employer to arbitrate his claim, and for inducing him to resign by means of an unfulfilled promise, and the New York law was not pleaded or notice thereof given at or before the pretrial conference.
Parenthetically, New York has apparently not dealt specifically with the issue of whether unemployment compensation benefits received by employees may be offset against an employee's claim for damages.[2] Hence this court can look to New Jersey law. The general New York mitigation *453 rule is stated in Silinsky v. State-Wide Ins. Co., 30 App. Div.2d 1, 289 N.Y.S.2d 541, 546-547 (App. Div. 1968): "It is the policy of New York to prevent double recoveries and unjust enrichment by an injured party." But even if it is concluded New York would probably apply that general minority rule as to collateral payments on mitigation, this court need not follow it if the public policy of the State of New Jersey would be violated.
New Jersey follows the majority rule in the United States today, that receipt of benefits from a source collateral to the defendant, while lessening the effect of the financial losses of plaintiff, will not diminish damages otherwise recoverable from the wrongdoer in tort cases. Thus, for example, gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, are not taken into account in computing damages. Benefits from such collateral sources conferred on the victim of a tort have not been applied in mitigation against the gross amount of damages recovered. Long v. Landy, 35 N.J. 44, 55-56 (1961) (insurance benefits); Cornish v. North Jersey St. Ry. Co., 73 N.J.L. 273 (Sup. Ct. 1906) (insurance benefits); Skillen v. Eagle Motor Co., 107 N.J.L. 211 (Sup. Ct. 1930) (gratuitous payments by relatives); Rusk v. Jeffries, 110 N.J.L. 307 (E. & A. 1932) (pension benefits). See also, Kurta v. Probelske, 324 Mich. 179, 36 N.W.2d 889, 893 (Sup. Ct. 1949) (unemployment compensation); Annotation, "Receipt of Public Relief or Gratuity as Affecting Recovery in Personal Injury Action," 19 A.L.R.2d 557 (1951); Annotation, "Collateral Source Rule," 75 A.L.R.2d 885 (1961); and cf. Note, "The Mitigating Effect on Damages of Social Welfare Programs," 63 Harv. L. Rev. 330 (1949).
There are two lines of opinion as to whether unemployment compensation should diminish a contract damage award. Defendant relies on the Wisconsin case of Dehnart v. Waukesha Brewing Co., 21 Wis.2d 583, 124 N.W.2d 664, 669-671 (Sup. Ct. 1963) (contract action), in arguing for such *454 mitigation. See also United Protective Workers v. Ford Motor Co., 223 F.2d 49 (7 Cir.1955).
The reasons generally stated for requiring such damage mitigation may be summarized as follows:
1. That the theory of damages is to provide compensation and make plaintiff whole, that is, to put him in the same position he would have been had there been no breach (the usual rule under the contract measure of damages) or to restore him as nearly as possible to where he was before the injury (the tort measure of damages).
2. That refusing to allow mitigation would allow plaintiff to make a profit above that which he would have been entitled to had there been no breach.
3. That the damages would exceed the compensatory measure of damages unless mitigation was allowed.
4. That where compensation is from unemployment compensation "insurance" purchased by defendant-employer alone (as is the case in New York) or where the employer's share (as in New Jersey where both employer and employee contribute) can be calculated or determined, there would be no reason to refuse mitigation as to the amount paid by the employer since it is to that extent a benefit purchased by the employer to benefit the employee.
5. That unemployment benefits are paid not from a collateral source but from a fund supported by the employer who has in effect purchased insurance for those of his employees who might be discharged or otherwise unemployed and that mitigation is not incompatable with unemployment compensation statutes which have as their purpose tiding the worker over a temporary period of unemployment.
6. That recovery of compensatory damages would reward plaintiff for losing his job. Obviously this would not apply where the job loss was not due to plaintiff's fault.
The contrary view is expressed in Lambert v. Equinox House, 126 Vt. 229, 227 A.2d 403 (Sup. Ct. 1967) (unemployment compensation in employment contract).
*455 The reasons generally stated against requiring such damage mitigation in an employment contract case may be summarized as follows:
1. That in addition to providing compensation, there is a "punitive" aspect where a defendant has wrongfully, though not necessarily willfully, breached a contract and that defendant must pay, rather than the general public. This is an aspect of the collateral source rule which recognizes as one of the consequences a punitive aspect, but not necessarily considered as punitive damages.
2. That to allow mitigation would result in a windfall to defendant and that it is better to allow plaintiff to profit than to lighten the obligation of a defendant by the reduction of his liability.
3. That defendant should not profit from a benefit administered by the State as a socially desirable program.
4. That even in workmen's compensation a tortfeasor cannot obtain reduction for benefits paid under a state compensation plan, although by statute[3] the employer's workmen's compensation insurance carrier may get subrogation in any third-party action.
5. It would be inconsistent to relieve the contract-breaking employer of responsibility for his actions. (It could be argued, however, that once the discharged employee has received the benefits to which he is entitled, the liability of the employer for wrongful discharge should be tried at the suit of either the employer or the compensation fund, and the judgment applied to reimbursement of the fund with any excess of recovery going to the employee. This would be a policy question for the legislature.)
6. That to allow such mitigation would vitiate the purpose of unemployment compensation legislation in New Jersey, and since there is no provision for subrogation in New Jersey, this would make it less expensive for employers to breach a *456 contract as to persons covered by such program, than it would for those not covered by unemployment compensation.
7. That payments from the unemployment compensation fund should not be regarded as wages received from employment.
It is submitted that the rationale applied in a case involving the breach of an employment contract, which also may have fault elements, should be the same as applied in a tort action. The philosophy requiring mitigation of damages is the same. McGraw v. Johnson, 42 N.J. Super. 267, 274 (App. Div. 1956). Mitigation is always a matter to be considered where contract damages are in issue. Roselle v. LaFera Contracting Co., 18 N.J. Super. 19, 28 (Ch. 1950). In Miele v. McGuire, 31 N.J. 339, 350 (1960), referring to public employees, it was held that contract damages may be mitigated by actual earnings or by that which could have been earned elsewhere. The Miele case does not consider collateral source items that might reduce the judgment, such as unemployment compensation or federal income tax deductions. In Roselle v. LaFera Contracting Co., supra, (18 N.J. Super. at 28), the standard for measuring damages and mitigation in a breach of employment contract dispute was stated to be the difference between the wrongfully discharged employee's salary for the term, less any wages the employee earned from other employment or that he could have earned if he had used proper effort to secure an alternative position. In applying this standard, the court did not contemplate further deductions for collateral payments to the claimant. Industrial Union of Marine and Shipbuilding Wkrs. v. American Dredging Co., 202 F. Supp. 940, 944 (E.D. Pa. 1961), applied the same standard and also did not discuss mitigation by reason of plaintiff's receipt of social welfare benefits.
In Busik v. Levine, 63 N.J. 351 (1973), app. dis. 414 U.S. 1106, 94 U.S. 831, 38 L.Ed.2d 733 (1973), a challenge to the validity of R. 4:42-11 (6) on several grounds, including the denial of equal protection by granting *457 prejudgment interest in tort cases only, the court recognized a distinction between tort actions and other types of actions:
To begin with, tort actions are a distinctive class of litigation having a special impact upon the administration of the judicial system in terms of volume ... Further, problems of this kind may be met in stages or on the basis of intensity. Hence it is no solid objection that a rule, whether announced in a judicial opinion or in a rule of court, does not go as far as it might. Finally the adoption of the rule does not foreclose holders of other unliquidated claims from contending the circumstances which attend their scene are so like the circumstances here involved that interest should also be allowed them. (Citations omitted). (63 N.J. at 374).
The opinion also referred to liquidated claims and held that the former rule distinguishing liquidated and unliquidated claims was outdated as far as interest on judgments was concerned. Busik v. Levine, supra at 358-359. This approach signifies that judicial rules of practice can be expanded to meet necessity as the occasion arises and that contract and tort judgments can be treated similarly.
Cases from other jurisdictions which reject such contract mitigation do so on the basis that the benefits received were intended to alleviate the distress of unemployment, not to diminish the amount which a defaulting or breaching employer must pay as damages in making whole a wrongfully discharged employee. Lambert v. Equinox House, Inc., supra; Billetter v. Posell, 94 Cal. App.2d 858, 211 P.2d 621, 623 (D. Ct. App. 1949); Bang v. International Sisal Co., 212 Minn. 135, 141, 4 N.W. 2d 113, 116 (Sup. Ct. 1942). N.J.S.A. 43:21-2 declares the policy:
As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement *458 of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment.
As stated in Sweeney v. Bd. of Rev., 43 N.J. 535, 539 (1965), and numerous other cases: "The Unemployment Compensation Law seeks to ameliorate the impact of involuntary unemployment."
Defendant relies on a second line of authority for the contrary view, that damages are to be regarded as compensatory only and that the collateral source rule is inapplicable in contract controversies. See Dehnart v. Waukesha Brewing Co., supra, and United Protective Workers of America v. Ford Motor Co., supra. In contrast, the present case involves wrongful contract breaking, the antithesis of the policy sought to be fostered by the New Jersey Unemployment Compensation Act which penalizes employers with high unemployment rates or high turnover with increased contributions to the fund.
Dehnart and United Protective Workers are not absolute in their holding and are distinguishable. Dehnart v. Waukesha Brewing Co., supra (124 N.W.2d at 670) relies on United Protective Workers v. Ford Motor Co., supra (223 F.2d at 53), which stresses the distinction between the philosophy of damages in tort as punitive and in contract as compensatory. The jury in this case found not a good faith breach of an employment contract due to an erroneous interpretation, but a wrongful breach justifying the award of full damages.
Furthermore, United Protective Workers refers to the discretion of the N.L.R.B. to deduct unemployment *459 compensation payments in any case where it would best effectuate the purposes of the act. The public policy of the New Jersey act is to help achieve a measure of social security by relieving economic insecurity due to involuntary employment through no fault of the employee. Bogue Elec. Co. v. Bd. of Review, 21 N.J. 431, 435 (1956). The Unemployment Compensation Law is designed to serve the general public interest and not alone the interest of the unemployed and is to be liberally construed to further its remedial and beneficent purposes. Campbell Soup. Co. v. Bd. of Review, 13 N.J. 431, 436 (1953). The spirit and intent of the law is to allow benefits to alleviate the misfortunes of unplanned disruptions in employment, including the circumstances of plaintiff in this case. If unemployment benefits are to be deducted from any judgment awarded, it would become a deterrent for individuals in plaintiff's situation to sue for damages and provide an incentive for an employer to deliberately breach a contract and gain the benefits of the collateral source payments.
The court, therefore, concludes that the reasons for denying mitigation are more persuasive and that an employer should not have a benefit conferred upon him when he is the wrongdoer, although he partially paid for the unemployment benefits (or, perhaps fully paid for them in New York). In no event should he receive the benefit of that share of the payments attributable to any contributions of the employee. Compare the discussion in Long v. Landy, supra (35 N.J. at 56), with regard to disability insurance in tort actions. Reducing recovery by the amount of the benefits received by plaintiff would be granting a windfall to defendant by allowing him an undeserved credit on his own wrongdoing from a source never so intended. In balancing these conflicting principles New Jersey courts have tended to permit what might appear as a form of double recovery by a plaintiff under such circumstances rather than allow reduction of the damages to be paid by the defendant wrongdoer. As stated in Theobald v. Angelos, 44 N.J. 228 (1965):
*460 * * * the law does not frown upon a greater satisfaction if there is no threat to the public interest or unfair advantage taken of another. So an injured party may recover fully from a tortfeasor for personal injuries notwithstanding that much of his loss was covered by contractual arrangements, such as for example an accident or life insurance policy. * * * In any event the tortfeasor must discharge his obligation in full; the problem of over-satisfaction in such circumstances concerns only the parties to the contract and perhaps also the State itself. [at 239; citations omitted]
If the concern is to prevent a windfall to the employee, then the remedy would appear to lie in legislative action to provide a system of subrogation or reimbursement of the appropriate government agency. See Note, 63 Harv. L. Rev. at 336.
Defendant's motion to reduce said award of wages owed by amounts received from unemployment compensation payments is denied.
NOTES
[1] The court need not decide item (2), whether the jury award for salary was compensation or salary subject to federal withholding and FICA amounts, since the parties agreed plaintiff would assume responsibility for paying any taxes required by law.
[2] New York unemployment benefits are paid entirely by employer contributions, while in New Jersey the employee also contributes. Compare N.Y. Labor Law §§ 570, subd. 1 and 570, subd. 6 (McKinney's Consol. Laws, c. 31, 1965), and N.J.S.A. 43:21-7(e). The employer's experience usually affects the rate of employer contribution under the law.
[3] N.J.S.A. 34:15-40.