NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1295-14T2

DIANA ACEVEDO,

     Plaintiff,

and

REX FORNARO,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

FLIGHTSAFETY INTERNATIONAL,
INC.,

     Defendant-Respondent/
     Cross-Appellant,

and

GREG WEDDING, DANNY ROBAYO,
and LISA ESPOSITO,

     Defendants.

> APPROVED FOR PUBLICATION
> AS REDACTED
> March 6, 2017
>
> APPELLATE DIVISION

Argued October 5, 2016[1] - Decided  March 6, 2017

Before Judges Reisner, Koblitz and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8474-10.

---

[1] After the oral argument, we directed the attorneys to file supplemental briefs on the issue of unemployment benefits.  The supplemental briefing was completed in January 2017.

Ty Hyderally argued the cause for appellant/cross-respondent (Hyderally & Associates, attorneys; Mr. Hyderally, of counsel and on the brief; Francine Foner, on the brief).

Steven Adler argued the cause for respondent/cross-appellant (Mandelbaum Salsburg, attorneys; Mr. Adler, of counsel and on the brief).

Kathryn K. McClure argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (Deutsch Atkins, P.C., attorneys; Ms. McClure, of counsel and on the brief).

Andrew Rubin argued the cause for attorneys pro se (Lurie Law Firm, attorneys; Mark D. Lurie, of counsel and on the brief).[2]

The opinion of the court was delivered by

REISNER, P.J.A.D.

Plaintiff Rex Fornaro, a flight instructor, filed a disability discrimination and retaliatory discharge claim against his employer, defendant Flightsafety International, Inc. (Flightsafety), a flight training school, under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 to -49 (LAD).[3]    In

---

[2] This firm is representing its interest in the counsel fee issue only.

[3] Defendant also sued several corporate employees for aiding and abetting, N.J.S.A. 10:5-12(e), but the trial court dismissed those claims on summary judgment.  We refer to Flightsafety as "defendant."

rendering its verdict, the jury found that defendant fired plaintiff due to his disability and as a reprisal for seeking accommodation of his disability.

The jury awarded defendant back pay of about $83,000, but awarded nothing for pain and suffering, apparently rejecting plaintiff's testimony that he was emotionally devastated by the loss of his job. The trial judge reduced the back pay award by about $14,000, representing fifty percent of the unemployment compensation plaintiff had received. A second judge heard the counsel fee motions and awarded plaintiff's trial counsel about $275,000 in fees and costs, and awarded about $104,500 in fees and costs to the law firm that represented plaintiff prior to trial.

Plaintiff appeals, contending that the trial judge erred in offsetting his back pay award by fifty percent of his unemployment compensation, dismissing his punitive damages claim at the close of the trial evidence, dismissing his separate claim against defendant for failure to accommodate his disability, dismissing the individual defendants, and declining to recuse herself from post-trial motions other than the counsel fee applications.

Defendant cross-appeals, arguing that the judge should have offset the back pay award by the entire amount of plaintiff's unemployment compensation, plaintiff failed to prove a prima facie case of discrimination, and the verdict was against the weight of

the evidence. Defendant further contends that the trial judge erred in excluding evidence of plaintiff's prior lawsuits and in recusing herself from hearing the fee motions, and that the second judge awarded an excessive amount of fees.

We hold that the collateral source statute, N.J.S.A. 2A:15-97, does not apply to LAD cases, and we find no other basis on which to deduct unemployment compensation from back pay awarded under the LAD. Therefore, we reverse that portion of the judgment reducing plaintiff's back pay award by one-half of the unemployment compensation he received. We remand for the limited purpose of entering an amended judgment reflecting that modification. In all other respects, we affirm on the appeal and the cross-appeal.

> **[At the direction of the court, Parts I and III, which are not deemed to warrant publication, see R. 1:36-2(d), have been omitted from the published version.]**

## II

Next, we address whether plaintiff's back pay award should be offset by the amounts of unemployment compensation he received. After his termination from Flightsafety, plaintiff was unemployed for eleven months, during which he received unemployment benefits. He then obtained a position as a pilot instructor with another company, at a higher salary than he was earning at Flightsafety.

Defendant argues that the entire amount of unemployment

A-1295-14T2

benefits plaintiff received should have been deducted from the back pay award; plaintiff contends that none of it should have been deducted. Amicus curiae National Employment Lawyers Association of New Jersey, Inc. supports plaintiff's position that unemployment benefits should not be deducted from back pay awarded under the LAD.

The trial court reduced plaintiff's back pay award by one-half of the unemployment benefits he received, reasoning that this result was equitable because both the employer and the employee had contributed to the State unemployment fund. We review a trial court's legal interpretations de novo. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

On this appeal, defendant initially relied on N.J.S.A. 2A:15-97, which provides as follows:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of [N.J.S.A. 39:6A-1] et seq., if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any

> party to the action shall be permitted to
> introduce evidence regarding any of the
> matters described in this act.
>
> [Ibid.]

It is clear from its language and legislative history that this statute was intended to reduce automobile insurance premiums by abrogating the common-law collateral source rule in personal injury cases.

> The Legislature's purpose in enacting
> N.J.S.A. 2A:15-97 was to do away with the
> common-law collateral-source rule. That rule
> permits a tort victim to retain collateral
> benefits--that is, benefits that do not come
> from a defendant--in addition to any amount
> that the victim might recover from that
> defendant. The effect of the rule is to deny
> a wrongdoer the benefit of any rights that the
> victim might have against other entities based
> on contract, employment, or some other
> relation. Patusco v. Prince Macaroni, Inc.,
> 50 N.J. 365, 368 (1967). The premise of the
> rule is that "[i]t should not concern the
> tortfeasor that someone else is obligated to
> aid his victim because of a duty assumed by
> contract or imposed by law," ibid., and that
> "an injured party may recover fully from a
> tortfeasor for personal injuries
> notwithstanding that much of his loss was
> covered by contractual arrangements, such as
> for example an accident or life insurance
> policy."
>
> [Kiss v. Jacob, 138 N.J. 278, 281 (1994)
> (quoting Theobald v. Angelos, 44 N.J. 228, 239
> (1965)).]

In Kiss, the Court recognized that the Legislature enacted the statute "in an effort to control spiralling automobile-insurance

costs[.]" Id. at 282 (citing Statement to Senate Bill No. 2708 (Nov. 23, 1987)).

Neither the plain language nor the history and purpose of N.J.S.A. 2A:15-97 supports its application to LAD cases. Implicitly acknowledging the weakness of its statutory argument, defendant subsequently modified its position, contending that unemployment benefits should be deducted from LAD back pay awards as a matter of policy, on a discretionary basis, to avoid giving a LAD plaintiff a double recovery. We cannot agree.

The LAD is remedial legislation, intended "to eradicate the cancer of discrimination[,]" protect employees, and deter employers from engaging in discriminatory practices. Jackson v. Concord Co., 54 N.J. 113, 124 (1969); see Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 108-09 (2010) (quoting Fuchilla v. Layman, 109 N.J. 319, 334, cert. denied, Univ. of Med. & Dentistry v. Fuchilla, 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed. 2d 51 (1988)). Shifting the benefit of unemployment compensation from the wronged employee to the discriminating employer does not serve the LAD's deterrent purpose. See Nini, supra, 202 N.J. at 108-09. The Legislature has amended the LAD multiple times since 1987, and has never adopted a provision such as N.J.S.A. 2:15-87 providing for

the deduction of unemployment compensation from back pay awards.[4]
Moreover, as one commentator has observed, the Division on Civil
Rights, the agency charged with enforcing the LAD, does not deduct
unemployment benefits from back pay awards. See Rosemary Alito
N.J. Employment Law, § 4-54, at 359 (2014).

We also note that the model jury charge applicable to damages
in LAD cases specifically provides that unemployment benefits are
not deducted from back pay awards. Model Jury Charge (Civil), §
2.33A(8) "General Mitigation Principles" (2014). The charge
contains a footnote to two cases, discussed below, which
specifically address the collateral source rule in the employment
context. See Sporn v. Celebrity, Inc., 129 N.J. Super. 449, 459-
60 (Law Div. 1974); Craig v. Y & Y Snacks, 721 F.2d 77, 83-84 (3d
Cir. 1983). Research reveals that Model Charge 2.33A(8) has
remained the same since 1993. See Model Jury Charge (Civil), §
2.33A(8) "General Mitigation Principles" (1993); Notice to the
Bar: Model Civil Jury Charges Updates, 218 N.J.L.J. No. 5 (Nov.
3, 2014). While model jury instructions are not binding authority,

_____

[4] Defendant's brief suggests that employers sometimes purchase
insurance to cover against the risk of discrimination lawsuits.
However, defendant does not cite to any expression of legislative
concern about the affordability of that type of insurance, as
opposed to auto insurance and other types of insurance covering
personal injury claims.

State v. Bryant, 419 N.J. Super. 15, 28 (2010), the re-adoption of this model charge in 2014 signals a consensus that those cases are still regarded as persuasive authority in this area of law.

In Sporn, the court applied the common-law rule to a case involving an employer's breach of an employment contract. The court reasoned:

> Reducing recovery by the amount of the [unemployment] benefits received by plaintiff would be granting a windfall to defendant by allowing him an undeserved credit on his own wrongdoing from a source never so intended. In balancing these conflicting principles New Jersey courts have tended to permit what might appear as a form of double recovery by a plaintiff under such circumstances rather than allow reduction of the damages to be paid by the defendant wrongdoer.
>
> [Sporn, supra, 129 N.J. Super. at 459-60.]

The Supreme Court cited Sporn with approval in a landlord-tenant case involving a similar underlying principle. N.J. Indus. Props. v. Y.C. & V.L., 100 N.J. 432 (1985). The issue before the Court was whether a defaulting tenant was entitled to a credit for "the rent, in excess of that due under the original lease, that the landlord collects from a subsequent tenant for the unexpired term of the original lease." Id. at 433. Citing Sporn, the Court reasoned that any windfall realized from the excess rent should benefit the wronged landlord rather than the breaching tenant.

> In other areas of the law, courts in this state have not allowed a wrongdoer to benefit from his wrongful actions. Sporn v. Celebrity, Inc., 129 N.J. Super. 449 (Law Div. 1974), was a suit for wrongful discharge of employment in violation of an alleged oral employment contract. There the court held that the defendant was not entitled to a mitigation of damages by the amount of unemployment compensation received by the plaintiff. Although the court recognized that mitigation is "always a matter to be considered where contract damages are in issue," the court held that the employer should not have a benefit conferred upon him when he is the wrongdoer. Id. at 456, 459. In concluding that the reasons for denying mitigation were more persuasive than those favoring it, the court noted that
>
> > New Jersey courts have tended to permit what might appear as a form of double recovery by a plaintiff under such circumstances rather than allow reduction of the damages to be paid by the defendant wrongdoer.
>
> [Id. at 447-48 (quoting Sporn, supra, 129 N.J. Super. at 459).]

Defendant has not cited any New Jersey precedent indicating that our Court has departed, or would depart, from that rationale with respect to employment discrimination cases under the LAD.

We also find persuasive the relevant federal cases plaintiff cites. More than fifty years ago, the United States Supreme Court construed the National Labor Relations Act (NLRA) as providing that unemployment compensation is not to be deducted from back pay

10

awards in unfair labor cases. NLRB v. Gullett Gin Co., 340 U.S. 361, 365-66, 71 S. Ct. 337, 340-41, 95 L. Ed. 337, 342-43 (1951). The Court rejected an argument that the rule gave the employee an unjustified windfall:

> Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state. We think these facts plainly show the benefits to be collateral. It is thus apparent from what we have already said that failure to take them into account in ordering back pay does not make the employees more than "whole" as that phrase has been understood and applied.
>
> [Id. at 364, 71 S. Ct. at 340, 95 L. Ed. at 342.]

In construing Title VII, which was based on the NLRA, the Third Circuit Court of Appeals held that unemployment benefits may not be deducted from back pay awards under Title VII. Craig, supra, 721 F.2d at 82-83. The court considered that "[u]nemployment compensation most clearly resembles a collateral benefit which is ordinarily not deducted from a plaintiff's recovery." Id. at 83. As in New Jersey Industrial Properties,

_supra_, the Third Circuit considered the equities involved in the rule:

> The rationale for a rule that at first glance may appear to provide an inequitable double recovery is that a wrongdoer should not get the benefit of payments that come to the plaintiff from a source collateral to the defendant. There is no reason why the benefit should be shifted to the defendant, thereby depriving the plaintiff of the advantage it confers. This policy also may have somewhat punitive undertones, as it focuses on what the defendant should pay rather than on what the plaintiff should receive.
>
> [_Ibid._ (citations omitted).]

Additionally, the court reasoned that the rule furthered the purpose of Title VII to deter employers from engaging in discrimination. "A rule precluding deduction of unemployment benefits from a back pay award would further the two key objectives of Title VII's back pay provision, . . . to end employment discrimination and secondarily to compensate injured victims in a make whole fashion." _Ibid._; _see also_ _Gelof v. Papineau_, 829 _F._2d 452, 455 (3d Cir. 1987) (applying the _Craig_ rule to a back pay award under the Age Discrimination in Employment Act, 29 _U.S.C.A._ §§ 621-634); _Davis v. Rutgers Cas. Ins. Co._, 964 _F. Supp._ 560, 574 (D. N.J. 1997) (following the _Craig_ rule). While _Craig_ is not binding on us, we find its reasoning persuasive.

A-1295-14T2

Accordingly, we hold that unemployment compensation benefits may not be deducted from back pay awarded under the LAD. We thus modify the back pay award, and remand for entry of an amended judgment reflecting this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1295-14T2