**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4741-17T3

FRANK RIVERA,

      Plaintiff-Appellant,

v.

TOWNSHIP OF CRANFORD,

      Defendant-Respondent.

_____

Argued March 3, 2020 – Decided June 12, 2020
Motion for reconsideration granted.
Resubmitted July 6, 2020 – Decided July 10, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey,
Law Division, Union County, Docket No. L-2829-15.

Lenzo & Reis LLC, attorneys for appellant
(Christopher P. Lenzo, of counsel and on the briefs).

Schenck Price Smith & King, LLP, attorneys for respondent
(John E. Ursin, of counsel; Sandra Calvert Nathans, on the
brief).

PER CURIAM

Plaintiff applied for a career firefighter position with defendant, Township of Cranford. Defendant extended a conditional offer of employment to plaintiff, subject to the results of a background investigation, drug screening, medical examination, and psychological evaluation.

After a comprehensive evaluation, a licensed clinical psychologist declined to recommend plaintiff for the appointment. He concluded that plaintiff, "at this time, does not possess the psychological characteristics deemed necessary to perform the duties of the position sought and is not considered to be 'psychologically suited' to that position . . . ." Because plaintiff did not pass the psychological evaluation, defendant did not appoint him to the career firefighter position.

In August 2015, plaintiff filed a complaint alleging defendant violated the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, by failing to appoint him as a paid career firefighter. Count one alleged "actual and/or perceived disability" discrimination. Count two alleged discrimination on the basis of his military service.

The complaint factually asserted, among other things, that: (1) the LAD "prohibits employers from requiring employees to submit to medical examinations

2

that are not job-related"; (2) defendant "unlawfully required [plaintiff] to submit to a pre-employment psychological evaluation that was not job-related"; and (3) defendant's decision not to appoint plaintiff was based solely upon the results of the psychological evaluation, which he purportedly failed. The court extended the initial discovery end date twice, resulting in a final discovery end date of September 29, 2017.

On July 26, 2017, defendant moved for summary judgment. Plaintiff cross-moved for partial summary judgment as to liability on count one, asserting that the LAD "requires pre-employment medical examinations to be job[]related and only used to screen out applicants whose disabilities prevent them from performing the essential functions of the position," and that defendant had not demonstrated the pre-employment psychological evaluation was job-related.

After argument on October 13, 2017, the court denied both summary judgment motions in an oral decision. After citing to relevant LAD case law and noting the parties' respective burdens of proof, the court found numerous unresolved factual issues. The court noted specifically the questions of fact as to whether defendant perceived plaintiff as having a disability when it declined to hire him, and whether plaintiff was qualified for the appointment, in light of subsequent favorable psychological examinations for other job applications.

A-4741-17T3

The case was initially scheduled for trial on January 22, 2018. It was later adjourned to February 20, 2018. On January 8, 2018, more than three months after the September 29, 2017 discovery end date, plaintiff served an expert report that addressed his economic losses resulting from defendant's alleged discriminatory hiring practices. On January 17, 2018, defendant moved to bar the expert report under Rule 4:23-5(b). Defendant asserted that the court had twice extended the original discovery end date, the report was untimely, and it was prejudiced because it could not depose the expert or obtain a rebuttal report before trial.

In response, plaintiff cross-moved to extend expert discovery and adjourn the February 20, 2018 trial date. Counsel certified he was unable to obtain the economic expert report earlier "because of a factual misunderstanding" concerning plaintiff's damages. He admitted he had not even discussed economic damages with plaintiff until defendant requested a settlement demand prior to the December 2017 mediation date.

On February 15, 2018, the court granted the motion to bar the untimely expert report and denied plaintiff's cross-motion. The court concluded that counsel's "honest mistake" did not constitute exceptional circumstances warranting a reopening and further extension of the discovery period.

A-4741-17T3

The case was tried before a jury in April and May 2018. Prior to jury selection, the parties presented several in limine motions. Pertinent to the issues on appeal, defendant asked the court to limit the issues before the jury to the counts in the complaint of LAD discrimination based on an actual or perceived disability, or military service.

Defendant advised the court that plaintiff had attempted to assert a cause of action of unlawful testing during the summary judgment arguments. Plaintiff claimed that giving the psychological test to prospective firefighters was unlawful because it was unrelated to the job duties. Defendant argued that plaintiff did not have a witness or any expert to support this theory. In addition, defendant contended plaintiff was erroneous in his assertion that it was defendant's burden of proof to validate the test. Defendant stated that in addition to the claim not being pled in the complaint, there was no case law supporting a shift of the burden of proof to the municipality to prove the legality of its test.

Plaintiff responded that his challenge to the test was a form of a disability discrimination claim, and that defendant was on notice of the claim from the summary judgment arguments as well as from certain questions plaintiff posed of various witnesses during depositions. He disputed the need for an expert.

A-4741-17T3

According to plaintiff, the first question on the jury verdict sheet should be: "[D]id the defendant meet its burden of proving that the psychological test given to [plaintiff] was related to the essential functions of the job of a paid firefighter . . . and that it was an accurate predictor of somebody's ability to perform those job functions[?]" If the jury answered affirmatively, plaintiff contended they would move on to the damages question. Plaintiff's counsel conceded there was no case law supporting his theory of burden shifting.

The court found there was no precedent to support a shifting of the burden of proof to defendant. The parties were instructed not to address the issue of whether the test was unlawful in their opening statements. The court stated it would make any additional rulings if necessary, as the case unfolded.

At the close of plaintiff's case, defendant moved to dismiss count two, asserting plaintiff had not presented any evidence to support his claim that his military service was a factor in defendant's hiring process. In response, plaintiff's counsel stated: "I don't think it's an actual [disability] discrimination case [and] I don't think it's a military services discrimination case. It's a perceived disability discrimination case, and the perception was based on the fact that the decision makers knew he had a medical discharge from the military, but it's a perception of

disability discrimination." Therefore, plaintiff withdrew his actual disability and military service discrimination claims.

Defendant then moved for a directed verdict on the perceived disability claim. Defendant argued there was no direct or circumstantial evidence that anyone in the decision-making process "considered or perceived [plaintiff] to be disabled . . . ." Instead, all of the evidence demonstrated that plaintiff was not hired because of his poor performance on the psychological examination, not because of any disability. Although plaintiff conceded there was no direct evidence to support his claim, he argued there was sufficient circumstantial evidence to allow the claim to proceed to a jury. The court denied the motion for directed verdict.

Defendant again raised the issue concerning the lawfulness of the psychological test that had been discussed at the start of the trial. Defendant argued there was no evidence that the test was illegal or discriminatory. And there was no basis to shift the burden to defendant to prove anything respecting the test. Counsel stated the only facts before the jury were that the psychologist did not recommend the hiring of plaintiff because of his performance on the evaluation – the failure to answer the questions with honesty, the unwillingness to answer numerous categories of questions and plaintiff's defensive and belligerent demeanor during the evaluation.

After a lengthy discussion, the court found that plaintiff needed an expert to establish his theory that the psychological examination was unlawful because it did not predict plaintiff's ability to perform effectively as a firefighter. In addition, the court found there was no evidence, circumstantial or otherwise, regarding this issue. Therefore, the court dismissed "the unpled claim" under Rule 4:37-2(b).[1]

The jury found in favor of defendant on the perceived disability discrimination claim. On May 9, 2018, the court entered a final judgment for defendant and dismissed the complaint.

On appeal, plaintiff challenges the following orders: (1) the May 9, 2018 order of dismissal/disposition; (2) the October 13, 2017 order denying his cross-motion for partial summary judgment as to liability on count one; (3) the February 15, 2018 order granting defendant's motion to bar plaintiff's economic expert report; and (4) the February 15, 2018 order denying his cross-motion to extend expert discovery and adjourn the trial. Plaintiff has not appealed the jury's verdict.

Plaintiff asserts that the court erred in denying his cross-motion for partial summary judgment as to liability on count one because defendant could not prove

---

[1] Plaintiff also argued briefly that defendant failed to show he was a direct threat. The court found the argument was inapplicable as there was no evidence that defendant was asserting this affirmative defense.

A-4741-17T3

that the pre-employment psychological examination was job-related, or prove the elements of the direct threat defense in order to justify the psychological examination on public safety grounds.

"In reviewing a grant or denial of summary judgment, [we are] bound by the same standard as the trial court under Rule 4:46-2(c)." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citations omitted). That rule requires a court to grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting Rule 4:46-2(c)).

"The slightest doubt as to an issue of material fact must be reserved for the factfinder, and precludes a grant of judgment as a matter of law." Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 399 (App. Div. 2015) (citation omitted). Furthermore, "[a]ny issues of credibility must be left to the finder of fact." Ibid. (citation omitted). Plaintiff alleged that defendant discriminated

against him under the LAD in failing to hire him as a career firefighter because of a perceived disability.[2]

"The LAD is remedial legislation, intended 'to eradicate the cancer of discrimination[,]' protect employees, and deter employers from engaging in discriminatory practices." Acevedo v. Flightsafety Int'l, Inc., 449 N.J. Super. 185, 190 (App. Div. 2017) (alteration in original) (quoting Jackson v. Concord Co., 54 N.J. 113, 124 (1969)). "[A]n employee who is perceived to have a disability is protected just as someone who actually has a disability" under the LAD. Grande v. St. Clare's Health Sys., 230 N.J. 1, 18 (2017) (citations omitted); see N.J.A.C. 13:13-1.3 (explaining that a person who is perceived to be a person with a disability, regardless of whether that person actually has a disability, is protected by the LAD).

"[D]irect evidence of discrimination is often not found." Myers v. AT&T, 380 N.J. Super. 443, 453 (App. Div. 2005) (citation omitted). Consequently, we evaluate the majority of claims, which involve circumstantial evidence of discrimination, by applying the procedural burden-shifting method utilized in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see Zive v.

---

[2] Because plaintiff later withdrew his additional claims of discrimination, we need only address the allegations of perceived disability.

Stanley Roberts, Inc., 182 N.J. 436, 447 (2005); Myers, 380 N.J. Super. at 45253.

Under that framework, plaintiff must initially prove the elements of a prima facie

case, as defined by the "particular cause of action." Victor v. State, 203 N.J. 383,

408 (2010).

In order to prove a prima facie case when alleging discrimination for failure

to hire,

> [t]he plaintiff must demonstrate by a preponderance of
> the evidence that he or she (1) belongs to a protected
> class, (2) applied and was qualified for a position for
> which the employer was seeking applicants, (3) was
> rejected despite adequate qualifications, and (4) after
> rejection the position remained open and the employer
> continued to seek applications for persons of plaintiff's
> qualifications.
>
> [Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363,
> 380 (1988) (quoting Andersen v. Exxon Co., 89
> N.J. 483, 492 (1982)).]

"[F]or claims of disability discrimination, the first element of the prima facie

case, that plaintiff is in a protected class, requires plaintiff to demonstrate that he

or she qualifies as an individual with a disability, or who is perceived as having a

disability, as that has been defined by statute." Victor, 203 N.J. at 410. "LAD

claims based upon a perceived disability still require 'a perceived characteristic

that, if genuine, would qualify a person for the protections of the LAD.'" Dickson

11                                                                    A-4741-17T3

v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 532 (App. Div. 2019) (quoting Cowher v. Carson & Roberts, 425 N.J. Super. 285, 296 (App. Div. 2012)); see Rogers v. Campbell Foundry Co., 185 N.J. Super. 109, 112 (App. Div. 1982) ("[T]hose perceived as suffering from a particular handicap are as much within the protected class as those who are actually handicapped.").

Our courts characterize the prima facie burden as "rather modest." Victor, 203 N.J. at 408 (quoting Zive, 182 N.J. at 447). If the plaintiff establishes a prima facie case, "a presumption arises that the employer unlawfully discriminated against the plaintiff." Grande, 230 N.J. at 18 (citation omitted). Thereafter, the burden of production shifts to the employer "to demonstrate a legitimate business reason for the employment decision." Victor, 203 N.J. at 408 n.9. If the employer does so, then the plaintiff must show "that the reason proffered is a mere pretext for discrimination" in order to prevail. Ibid. (citing McDonnell Douglas Corp., 411 U.S. at 802). "The ultimate burden of persuasion that the employer intentionally discriminated against the employee remains with the employee at all times." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988) (citing Andersen, 89 N.J. at 493).

To provide context for plaintiff's claim of discrimination for a perceived disability, we furnish the following factual evidence from the summary judgment record.

In 2004, plaintiff began volunteering at the Township Fire Department as part of the Explorer program, which allows minors to learn about firefighting. The Fire Department consists of career paid firefighters and unpaid volunteer call firefighters. Both categories of firefighters are appointed by the Township Committee. In 2006, the Township Committee appointed plaintiff as a volunteer call firefighter. A call firefighter is not required to undergo a psychological evaluation prior to appointment.

The duties of paid career firefighters and unpaid call firefighters overlap in some respects. Both perform interior firefighting during structural fires, pull down ceilings and walls, and rescue people and animals. Both work in pairs and are exposed to dangerous and stressful situations. However, call firefighters are always closely supervised by career firefighters, and are limited in the duties they can perform. They cannot drive fire trucks, operate aerial equipment, operate the water pump or ladder, or respond to ambulance or medical transport calls. A call firefighter is not assigned a shift or required to work a minimum number of hours.

A-4741-17T3

They respond to calls when they choose to do so. In contrast, a career firefighter must work two twenty-four hour shifts each week.

In January 2008, plaintiff enlisted in the United States Marine Corps and took a four-year leave of absence from the Fire Department. He served in the Marine Corps until August 2012; at which time he was "honorably discharged for medical reasons."

During his military service, plaintiff served in several overseas locations, including Kuwait and Iraq. He was disciplined twice for minor infractions and received alcohol counseling. During his service, plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and traumatic brain injury (TBI). He underwent therapy through the Veterans Administration (VA) in 2012 and 2013 for his medical and psychological issues, and receives disability compensation from the VA.

When plaintiff returned home in 2012, he resumed serving as a call firefighter in the Township. He never told anyone at the Township or the Fire Department about the reason for his medical discharge from the Marines, or that he was diagnosed with PTSD or TBI.

However, plaintiff testified at his deposition that numerous members of the Fire Department had expressed negative opinions about his military service and

mental health when he returned from Iraq. He recounted two firefighters telling him that they heard "others at the firehouse . . . talking negatively" about him before he was up for appointment "and spreading rumors" that plaintiff: had a dishonorable military discharge and a DUI; was an alcoholic; and "the military gave [him] a stupid dog" because he was "crazy."

Several members of the Fire Department were deposed and asked about the alleged negative comments and rumors. Some testified they had heard negative comments and rumors about plaintiff after he returned from overseas, while others denied hearing any such comments or rumors.

One firefighter, a friend, noted that plaintiff's service dog came with him to the firehouse. He also stated that plaintiff told him and other call firefighters that he had contemplated suicide with pills and alcohol. The firefighter denied telling any of his superiors about that conversation. Another firefighter said he recalled others talking negatively about plaintiff, including that he had psychological issues and was "let go early" from the military, but no supervisors were present during this discussion.

Several supervisors were also deposed. One, a lieutenant, testified that he never heard any disparaging remarks about plaintiff's military service or mental health. He did notice that plaintiff had a service dog.

A-4741-17T3

The Fire Chief who extended the conditional offer of employment to plaintiff was Leonard Dolan III. He testified that defendant has required all career firefighter applicants to undergo psychological testing since approximately 1985. He stated the evaluations are job-specific to determine whether the candidate is suitable for a firefighter position.

Before the evaluation takes place, the Institute for Forensic Psychology (IFP) requests background information from the Fire Department about the candidate concerning "school, work, interpersonal, family, legal, financial, substance use, [and] mental health." The Fire Chief emails IFP the background information based upon his personal knowledge of the candidate. If the candidate satisfies all of the hiring requirements, the Township Committee finalizes the appointment by majority vote.

Pursuant to this protocol, Dolan sent IFP the following email:

> Frank is a single male who has been a member of our Call Department since 2006. Frank joined the US Marine Corps in 2008 and served out his enlistment but I believe received a medical discharge. He was deployed overseas. Frank does not have any disciplinary history with the Cranford Fire Department. I'm unsure of his military disciplinary record.

Dolan testified that he had no issues with plaintiff's performance as a call firefighter and felt that he was qualified to be a career firefighter apart from his

failure to pass the psychological evaluation. Dolan denied hearing anyone speak negatively about plaintiff's military service or mental health or receiving any complaints about plaintiff's performance as a call firefighter. He testified that he never spoke to plaintiff about his military or medical history. He denied speaking to the examining psychologist prior to plaintiff's evaluation.

When the psychologist called Dolan to report that he was not recommending plaintiff for appointment, Dolan testified he was "very surprised" that plaintiff did not pass the evaluation. If not for the poor psychological evaluation, Dolan said he would have recommended plaintiff for appointment as he "absolutely" wanted plaintiff to be a career firefighter in the Township. Dolan believed that candidates with military experience, like plaintiff, were "ideal" for the job.

Shortly after these events, Daniel Czeh became the Fire Chief. He testified that he considered plaintiff a friend and "a good firefighter." He acknowledged that plaintiff "seemed a little bit on edge" and "aggravated" after he came back from his military service, but he denied any concern that plaintiff "was a danger to anyone." He stated he met with plaintiff before the psychological evaluation and told him not to lie and to do his best, as the Fire Department wanted plaintiff to get the paid appointment.

17

Several members of the Township Committee were also deposed. They testified that plaintiff was removed from consideration for the position due to the psychological test results. The members confirmed that plaintiff's failure to pass the psychological evaluation was the only reason plaintiff was not hired.

Against this backdrop, the court considered the parties' cross-motions for summary judgment. In denying plaintiff's cross-motion for partial summary judgment, the court found there was a question of fact as to whether defendant perceived plaintiff as having a disability when it declined to hire him, stating:

> There's a question as to whether it was perceived because while he didn't broadcast it . . . there is evidence in the record that there were guys who said we're uncomfortable with him, he's different since he came back from Iraq. He's different. He is not the same Frankie that we knew before he left. He was a cadet here from 16 years old. He was a call man. He came back as a call man. He did everything he was supposed to do. He was a good fireman. The chief purports to say that he wanted him. He liked the kid and he wanted him to pass and he was surprised that he didn't pass the psychological examination.

The court also found that questions of fact existed as to whether plaintiff was qualified for appointment under the second and third elements of the prima facie test given the subsequent favorable psychological evaluations for other subsequent

job applications, and that the proofs submitted as to the fourth element were "not dispositive."

There is ample evidence in the record to support the court's denial of plaintiff's cross-motion for partial summary judgment on count one. Plaintiff contends he never told anyone at the Fire Department or the psychologist about his PTSD and TBI diagnoses or treatment for his conditions. The record contains no other evidence to suggest that defendant knew plaintiff had an actual disability and based its decision not to hire him on that fact. See, e.g., Illingworth v. Nestle U.S.A., Inc., 926 F. Supp. 482, 489-91 (D.N.J. 1996) (holding that because the employee never told his employer about his dyslexia, he failed to satisfy his prima facie burden to prove disability discrimination under the LAD as he could not establish a causal connection between his dyslexia and his termination).

To satisfy his burden on the first Victor element, plaintiff presented evidence that other firefighters had discussed the differences they perceived in him since his return from military service, the fact that he had a service dog and there were rumors about his military discharge. He also relied on Dolan's email to IFP in which he stated that he believed plaintiff had received a medical discharge from the military. However, general negative comments about a plaintiff's mental health do not establish that a defendant perceived a plaintiff to be suffering from a

"particular handicap" or specific disability as defined under the LAD. Dickson, 458 N.J. Super. at 532; Rogers, 185 N.J. Super. at 112; see N.J.S.A. 10:5-5(q).

Moreover, plaintiff's superiors denied ever hearing about any issues stemming from plaintiff's military service or any medical diagnoses or treatment. There is no evidence to support the conclusion that the persons responsible for deciding whether to appoint plaintiff as a career firefighter – Dolan and the Township Committee – had either engaged in making or had heard the negative comments. To the contrary, Dolan conditionally appointed him to the position. His email only serves to raise a question of fact as to whether he perceived plaintiff as having a disability. It is unclear from the record how Dolan came to believe that plaintiff was discharged from the military for medical reasons. Nonetheless, the email does not mention any specific disability, and Dolan testified he would have recommended plaintiff for appointment but for his failure to pass the psychological evaluation.

It cannot be disputed that numerous factual issues existed as to whether defendant perceived that plaintiff suffered from a particular disability as defined under the LAD. Therefore, plaintiff could not satisfy the first element of the prima facie case test and was not entitled to partial summary judgment on that count. The

A-4741-17T3

trial court's decision denying summary judgment was well-reasoned and supported by the evidence.

On appeal, in his reply brief, plaintiff contends that he did not need to prove a prima facie case of actual or perceived disability discrimination because "[t]he issue is whether [he] should have been subjected to that [psychological] examination at all." He asserts that "[i]f the examination was unlawful, defendant's refusal to hire [him] was also unlawful, as defendant concedes that the examination was the only reason that it did not hire [him]."

As stated, plaintiff's complaint contained two counts; he alleged defendant discriminated against him under the LAD because of an actual or perceived disability, and because of his military service. As a result, the discovery centered on those claims.

However, two years after the filing of the complaint, plaintiff asserted in his cross-motion for summary judgment a claim that the psychological evaluation he underwent was unlawful because it was not job-related. At oral argument on the summary judgment motions, plaintiff's counsel argued this was his primary LAD claim. Defendant challenged the propriety of plaintiff's argument as the claim was never pled. The judge denied the motions, without comment as to the newly-raised

claim. The case proceeded to trial several months later, on plaintiff's allegations of discrimination under a perceived disability.

We initially note that the claim of an unlawful test is a different cause of action than those contained within the complaint. And the factual assertions regarding the psychological evaluation in the complaint do not equate to legal causes of action. Despite being apprised of the omission during the summary judgment arguments, plaintiff did not seek leave to amend the complaint to include the claim. As explained by our Supreme Court:

> [T]he fundament of a cause of action, however inartfully it may be stated, still must be discernable within the four corners of the complaint. A thoroughly deficient complaint--a complaint that completely omits the underlying basis for relief--cannot be sustained as a matter of fundamental fairness. An opposing party must know what it is defending against; how else would it conduct an investigation and discovery to meet the claim?
>
> [Bauer v. Nesbitt, 198 N.J. 601, 610 (2009).]

Nevertheless, plaintiff pursued his assertions during the trial. At the conclusion of the evidence, the court found the contentions required expert testimony and plaintiff's arguments were unsupported by case law. The court dismissed "the unpled claim."

We have considered plaintiff's contention that the judge erred by dismissing the unpled claim regarding the psychological exam. We are convinced the argument lacks sufficient merit to warrant extended comment. R. 2:11-3(e)(1)(E). We note, however, that dismissal of the claim was proper because (1) the claim was not pled as a separate cause of action under the LAD; (2) the claim regarding the test was subsumed in the claim based on an actual or perceived disability; and (3) the judge correctly found that plaintiff's claim regarding the test was not supported by sufficient evidence.

Plaintiff also asserts error in the court's February 15, 2018 orders granting defendant's motion to bar his expert report on economic damages and denying his cross-motion to extend discovery. He contends that exceptional circumstances justified the late submission of the report. However, because the jury found plaintiff did not establish any discriminatory action by defendant, it did not reach the damages issue. Plaintiff has not challenged the jury's verdict and therefore this contention on appeal is moot. See Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)) ("An issue 'is moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'").

A-4741-17T3

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4741-17T3