**Gary O. DREWS, Plaintiff-Appellant,**

v.

**DENVER RECYCLING COMPANY, d/b/a Associated By-Products, Inc., a Colorado corporation, Defendant-Appellee.**

**No. 84CA0584.**

Colorado Court of Appeals,
Division II.

Sept. 18, 1986.

Certiorari Denied January 20, 1987.

Robert W. Johnson, John D. Braun, Colorado Springs, for plaintiff-appellant.

Sherman and Howard, Walter V. Seibert, Theodore A. Olsen, Denver, for defendant-appellee.

SMITH, Judge.

Plaintiff, Gary O. Drews, appeals from an adverse judgment entered by the court, sitting without a jury, in which it was determined that he was not entitled to the benefit of a provision of his employment contract authorizing him to receive certain compensation if he was discharged without cause. Although the court found the discharge provision valid and the termination to be without cause, it concluded that because Denver Recycling Company (employer) had attempted to rescind the discharge and offered plaintiff re-employment, plaintiff was not entitled to enforce the discharge provision of the contract. We reverse.

There is no real dispute as to the facts. The written employment contract resulted from a transaction in which plaintiff sold his business to employer. It was drafted by employer, and it provided, in essence, that employer would hire plaintiff for a term of five years at an agreed minimum compensation. The contract further provided, *inter alia*, as follows:

"8. TERMINATION: This Employment Agreement may be terminated by the Employer with or without cause at any time upon thirty (30) days written notice to the Employee. In the event the Employment Agreement is terminated without cause by the Employer, the Employee shall be entitled to receive compensation to the end of the period of this Agreement...."

The term "cause" was limited to death of employee, fraud, disloyalty, theft, or substandard production.

The contract also contained a non-competition agreement which precluded plaintiff from engaging in any competitive business in Colorado for a period of one year after termination of the agreement for any cause or reason.

Employee worked for employer for approximately one year. After returning from a short vacation he was greeted with rumors that he had been fired. Employee immediately contacted a Mr. McKee, an outside supervisor for employer, and requested a meeting to discuss the matter.

At the meeting, Mr. Heller, employer's president, was present with Mr. McKee and employee. After briefly discussing employee's performance and examining the profit and loss statements, Mr. Heller left the room. Mr. McKee then stated, "Gary, we have to make a change, and as far as I am concerned the change has already been made." Employee inquired, "Fine, where are you going to put me?" McKee repeated that the changes had already been made. Employee then inquired of McKee, "Does that mean I'm fired?" McKee said, "Yes, it does."

Employee then asked for a check. McKee denied that the employee had any

money coming, and the employee advised McKee that because he had been fired, he was owed the balance of his contract.

McKee, who had not seen the employee's contract, went into Mr. Heller's office where he and Heller reviewed the contract together. McKee then returned to the room where the employee was waiting, and said, "You son of a bitch, you sure did your homework, didn't you," to which the employee replied affirmatively. Shortly thereafter, Mr. Heller returned to the room and told employee that his termination had been rescinded. Employee advised Mr. Heller that since he had been terminated Mr. Heller would have to deal with his attorney and the meeting concluded.

The evidence demonstrates that Mr. McKee had the authority to fire employee and that he did so. Mr. McKee testified, essentially, that Mr. Heller did not become interested in the firing until he had re-examined the agreement and that the sole reason for his attempt to rescind that action was based on his potential liability under the termination provisions of the agreement.

Several times thereafter employer tried to persuade employee to return to work. These overtures were refused and this litigation ensued.

■ The trial court found that the employee had been fired on the spot, without "cause" as that term was defined in the agreement. It further ruled that, inasmuch as the agreement was arrived at in conjunction with the sale of the business and the several non-competition covenants, the parties had intended to liquidate damages. It also concluded that the provision at issue was valid and enforceable and found that employee would have been entitled to $78,333.33 under the above-quoted provision of the contract. These findings are supported in the evidence, and we agree with the court's legal conclusions relative to them.

The court in its written order of judgment ultimately concluded, however, that employee could recover nothing because:

"Defendant unilaterally rescinded the firing of plaintiff, and unilaterally, in effect, rehired Defendant. Plaintiff could have resumed his employment with defendant, but chose not to do so. Therefore, the Court concludes that, as a matter of fairness, the liquidated damages provisions of the Employment Agreement may not be enforced, and Defendant is entitled to judgment."

In justification of its ultimate conclusion that "fairness" precluded employee's recovery of that for which he had bargained, the trial court cites three arbitrator's decisions in labor dispute cases. *Consumers Union of the United States, Inc.*, 22 Lab.Arb. 238 (Gray, 1953); *American Bakeries, Co.*, 34 Lab.Arb. 360 (Sembower, 1960); *Vickers, Inc.*, 41 Lab.Arb. 918 (Seitz, 1963).

In each of these cases involving union contracts, the subject employees had "quit" their employment with their respective employers, and later sought to be re-employed by those same employers. The arbitrators each decided that the employers had not detrimentally relied on the fact that their employees had quit, had suffered little in the way of damages as a result thereof, and were therefore required to rehire the employees.

■ These cases are factually inapposite to the case at bar. We reject the argument that employee could not consider his firing final until he had affirmatively and detrimentally acted in reliance thereon. The employer, having drafted the agreement, is charged with knowledge that firing employee without cause would invoke the termination provisions of the agreement. Employee unconditionally accepted his firing and considered it final when he demanded performance under the agreement. It was not until after employee had made his demand for performance under the special provision that employer attempted to rescind the firing or offered to rehire him. Even then, employer's attempt to rescind, or offer to rehire, did not occur until employer had reexamined its liability under the contract. We hold that the rights and duties of the parties resulting therefrom

were fixed when employee was informed of the firing and asserted his rights under the agreement.

This is not an action for damages arising out of breach of contract. Rather, it is one to enforce the terms of agreed compensation bargained for by the parties. *See Cherry v. A–P–A Sports, Inc.*, 662 P.2d 200 (Colo.App.1983). Here, as in *Cherry, supra,* the total agreed compensation over the five-year term was, as the trial court found, part and parcel of the consideration bargained for—in this case the employee's sale of his business. Having correctly found and concluded that the termination provision of the contract was valid and enforceable and that the condition which gave rise to its operation had occurred, the trial court had no choice but to enforce its terms. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978).

Defendant argues that the trial court's ultimate conclusion implies that employee was required to accept re-employment in order to mitigate damages. If such was the court's intention, it erred in imposing such a duty on employee. We held in *Cherry, supra,* that the doctrine of mitigation of damages is inapplicable in an action on an employment contract for the agreed compensation.

Even if this had been exclusively an employment contract as employer seems to argue, the result would be the same. If the only consideration given by employee was the promise to work, and if the termi-nation provision was merely, as the trial court here characterized it, one for "liquidated damages," and even if the action were solely one for breach, the doctrine of mitigation of damages would not be applicable. Although Colorado seems not to have expressly addressed this point, other jurisdictions have held that a terminated employee has no duty under a "liquidated damages clause" to mitigate his damages. *Wassenaar v. Panos*, 111 Wis.2d 518, 331 N.W.2d 357 (1983); *Seco Chemicals, Inc. v. Stewart*, 169 Ind.App. 624, 349 N.E.2d 733 (1976); *Musman v. Modern Deb, Inc.*, 50 A.D.2d 761, 377 N.Y.S.2d 17 (1975).

We hold, based on the findings of fact made by the trial court, and on its initial conclusions, that its ultimate conclusion was erroneous. It should have entered judgment for employee in the amount of $78,333.33 plus interest from the date of employee's termination on January 30, 1981.

The judgment is reversed and the cause is remanded with directions to enter a new judgment in conformity with the views expressed herein.

STERNBERG and BABCOCK, JJ., concur.