**TECHNICAL COMPUTER SERVICES, INC., Plaintiff–Appellant and Cross–Appellee,**

v.

**James BUCKLEY, Defendant–Appellee and Cross–Appellant.**

**No. 90CA1932.**

Colorado Court of Appeals, Div. II.

July 30, 1992.

Rehearing Denied Aug. 27, 1992.

Certiorari Denied Feb. 16, 1993.

Stutz, Dyer & Miller, Paul G. Urtz, Denver, for plaintiff-appellant and cross-appellee.

Marshall D. Brodsky, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge HUME.

Plaintiff, Technical Computer Services, Inc. (TCSI), appeals from a judgment entered on a jury verdict in favor of defendant, James Buckley, on his counterclaim for abuse of process. Defendant cross-appeals the amount awarded to him pursuant to the jury's verdicts in his favor on his counterclaims for breach of contract, for compensation and penalty due upon his termination pursuant to § 8-4-101, et seq., C.R.S. (1986 Repl.Vol. 3B) (Wage Act), and for damages on his claim of abuse of process. We affirm in part, reverse in part, and remand with directions.

Buckley was hired by TCSI under a written one-year employment contract. After his discharge by TCSI during the contract term, Buckley filed a complaint in county court seeking the next installment of pay due to him under the employment contract, plus an amount he claimed was fully earned and owed to him at the time of his termination, together with the penalty provided by § 8-4-104, C.R.S. (1986 Repl.Vol. 3B).

Alleging that it possessed claims against Buckley arising from the employment relationship between the parties that exceeded the then existing $5,000 jurisdictional limit of the county court, TCSI filed suit asserting those claims in the district court and requested transfer of the county court proceedings for consolidation in the district court action pursuant to C.R.C.P. 313(b)(1). TCSI's district court complaint included claims for Buckley's breach of the employment contract, for fraudulent misrepresentation, and conversion.

Upon consolidation, Buckley was aligned as a party-defendant, and his original Wage Act claim and his added claims for breach of employment contract and abuse of process were designated as counterclaims in the district court proceedings. All issues,

save one, were determined by the jury. The amount of damages on defendant's abuse of process counterclaim was determined by the court after a separate hearing was held on that issue.

## I.

TCSI contends that the trial court erred in denying its pretrial motion for dismissal or for summary judgment and its subsequent motion for directed verdict as to the abuse of process counterclaim. We disagree.

### A.

The denial of a motion for summary judgment is an interlocutory, non-final ruling which may not be reviewed on appeal after trial and entry of final judgment. *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981); *Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo.App.1990).

Similarly, any errors asserted concerning a trial court's ruling denying a motion to dismiss for failure to state a claim are capable of preservation for review on appeal by other means. To the extent that such issues are not so preserved, they are deemed to have been waived.

Here, for example, the issue presented by TCSI's motion to dismiss was preserved by its later motion for directed verdict. Thus, the trial court's denial of TCSI's pretrial motion is not reviewable on appeal.

### B.

We also reject TCSI's contention that the trial court erred in denying its motion for directed verdict on the abuse of process counterclaim. That contention was premised upon an argument that the law requires evidence of an overt wrongful act in addition to initiation of abusive legal process. We reject the premise that an additional overt wrongful act is an essential element of an abuse of process tort claim.

The assertion of "sham" claims or defenses as a means of improperly interfering with another person's right to petition or to pursue legitimate claims in judicial proceedings may constitute actionable abuse of legal process. To succeed in such an action, the party asserting abuse of process must show: (1) that the other party's petitioning activities (claims or defenses) are devoid of factual support or, if supportable in fact, have no basis in law; (2) the primary purpose of such activities is to harass the claimant or to effectuate some other improper objective; and (3) such "sham" activities adversely affect the legal interest of the abuse of process claimant. *Concerned Members of Intermountain Rural Electric Ass'n v. District Court*, 713 P.2d 923 (Colo.1986); *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo.1984); *Ware v. McCutchen*, 784 P.2d 846 (Colo. App.1989). If such elements are present, no additional overt wrongful act need be shown in order to sustain a claim for abuse of process.

In reviewing a trial court's ruling on a motion for directed verdict, the evidence must be considered in a light most favorable to the party against whom such relief is requested. *Hildyard v. Western Fasteners, Inc.*, 33 Colo.App. 396, 522 P.2d 596 (1974). And, when a party makes out a prima facie case, even though the facts are in dispute, it is for the jury, rather than the court, to resolve the conflict. *Romero v. Denver & Rio Grande Western Ry. Co.*, 183 Colo. 32, 514 P.2d 626 (1973).

Here, Buckley alleged in his counterclaim that TCSI's claims were baseless and without any foundation in fact and that they were asserted as a sham for the purpose of hindering, harassing, and delaying the pursuit of his legitimate claims under the employment contract and the Wage Act through appropriate court proceedings. He offered affidavits tending to support the "sham claim theory" in response to TCSI's motion for summary judgment, and he offered further evidentiary support for this claim through testimony presented at trial.

Therefore, we perceive no error in the trial court's denial of TCSI's motion for directed verdict.

## II.

### A.

On cross-appeal, Buckley contends that the damages award on his counterclaim under the Wage Act must be reversed because the court submitted an improper verdict form for the jury's use in determining that issue. We disagree.

▮ Section 8–4–104(1), C.R.S. (1986 Repl.Vol. 3B) provides that if an employee is terminated by the employer "the wages or compensation for labor or service earned and unpaid at the time of such discharge is due and payable immediately." If the employer refuses to pay wages due an employee as required by the statute and does so without a good faith legal justification, the employer is liable to the employee for a 50% penalty on all unpaid wages. *See* §§ 8–4–104(1) and 8–4–104(3), C.R.S. (1986 Repl.Vol. 3B).

Here, the court instructed the jury, in language which tracked the statute, as to the elements which must be proved in order for defendant to receive the penalty. Buckley made no contemporaneous objection to the elemental instruction and has also conceded its correctness on appeal.

▮ On appeal, Buckley argues that the verdict form was erroneous because it required the jury to determine damages rather than the amount of wages which were unpaid on the date of his termination. At trial, although Buckley did tender a multi-purpose verdict form which contained, among other things, the language he now asserts to be appropriate, he has not provided a record contemporaneous with that tender demonstrating the basis of the trial court's ruling in rejecting it. Hence, we deem the record insufficient to warrant reversal. *See Kennedy–Fudge v. Fink,* 644 P.2d 91 (Colo.App.1982).

▮ Moreover, Buckley's contention of error is based on the mere semantics of the verdict form. We decline to reverse a jury verdict based on a legally correct instruction, even though the verdict form itself might have been more appropriately worded. *See Stephens v. Koch,* 192 Colo. 531, 561 P.2d 333 (1977).

▮ Here, the jury was properly instructed that the statute requires that compensation earned and unpaid at the time of discharge is due and payable upon termination. If the jury followed this instruction correctly, which we presume it did, *People v. Moody,* 676 P.2d 691 (Colo.1984), it logically would have equated the amount of unpaid wages with the amount of plaintiff's damages. Furthermore, assessment of the amount of the monetary award is the exclusive province of the jury, and it is only in the clearest of cases that its award will be overturned on review. *Martin v. Bralliar,* 36 Colo.App. 254, 540 P.2d 1118 (1975).

### B.

Buckley next contends that the trial court erred in denying two of his motions in limine. We agree in part.

#### 1.

Buckley's first motion in limine requested that, by virtue of the collateral source rule, no evidence of his receipt of unemployment compensation benefits should be admitted. He also contends that the court erred in instructing the jury to deduct any benefits received from unemployment compensation from damages assessed for TCSI's breach of the employment contract. We agree.

▮ The collateral source rule provides that recoverable damages are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute. *Powell v. Brady,* 30 Colo.App. 406, 496 P.2d 328 (1972), *aff'd,* 181 Colo. 218, 508 P.2d 1254 (1973).

▮ The collateral source rule is often identified with tort cases, and indeed, the codification of the collateral source rule relates specifically to torts. Section 13–21–

111.6, C.R.S. (1987 Repl.Vol. 6A). However, the common law collateral source rule is equally applicable to contract actions. *See Coleman v. United Fire & Casualty Co.,* 767 P.2d 761 (Colo.App.1988); Fleming, *The Collateral Source Rule and Contract Damages,* 71 Cal.L.Rev. 56 (1983).

 We have refused to apply the collateral source rule to gratuitous benefits received by plaintiffs from governmental sources. *Gomez v. Black,* 32 Colo.App. 332, 511 P.2d 531 (1973). Although unemployment compensation benefits are not wholly gratuitous, neither are they a direct benefit from the employer. Rather, they are benefits received from a collateral governmental source.

In *National Labor Relations Board v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), the court stated:

Payments of unemployment compensation were not made to the employees by [the employer] but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent [the employer] helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of [employer], but to carry out a policy of social betterment for the benefit of the entire state. (citations omitted) We think these facts plainly show the benefits to be collateral.

In Colorado, employers are required to pay taxes for unemployment compensation, § 8–76–101, et seq., C.R.S. (1986 Repl.Vol. 3B); however, it is the fund itself, a collateral source, which is the immediate recipient of the monies paid. Section 8–70–103(13), C.R.S. (1986 Repl.Vol. 3B). Moreover, we conclude that compensation benefits are not gratuitous because they are granted in exchange for services the employee has previously rendered. *See Rutzen v. Monroe County Long Term Care Program, Inc.,* 104 Misc.2d 1000, 429 N.Y.S.2d 863 (1980); *see also Keelan v. Van Waters & Rogers, Inc.,* 820 P.2d 1145 (Colo.App.1991) *(cert. granted* December 3, 1991) (employee had already given consideration for disability benefits by working).

In addition, we conclude that deduction of unemployment compensation benefits as mitigation of damages in employment contract cases does nothing to promote public policy. The General Assembly has stated the policy behind its enactment of unemployment compensation legislation, as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the general assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life....

Section 8–70–102, C.R.S. (1986 Repl.Vol. 3B).

Other jurisdictions which have held that receipt of unemployment compensation benefits should not diminish a contract damage award have done so based on the policy that the "benefits received were intended to alleviate the distress of unemployment, not to diminish the amount which a defaulting or breaching employer must pay as damages in making whole a wrongfully discharged employee." *Sporn v. Celebrity, Inc.,* 129 N.J.Super. 449, 324 A.2d 71 (1974); *see also Green Forest Public Schools v. Herrington,* 287 Ark. 43, 696 S.W.2d 714 (1985); *Monroe v. Oakland Unified School District,* 114 Cal.App.3d 804, 170 Cal.Rptr. 867 (1981); *Washington Welfare Ass'n, Inc. v. Poindexter,* 479 A.2d 313 (D.C.1984); *Schwarze v. Solo Cup Co.,* 112 Ill.App.3d 632, 68 Ill.Dec. 228, 445 N.E.2d 872 (1983); *Bang v. International Sisal Co.,* 212 Minn. 135, 4 N.W.2d 113 (1942); *Burens v. Wolfe Wear–U–Well Corp.,* 236 Mo.App. 892, 158 S.W.2d 175 (1942); *Century Papers, Inc. v. Perrino,* 551 S.W.2d 507 (Tex.Civ.App.1977); *Lambert v. Equinox House, Inc.,* 126 Vt. 229, 227 A.2d 403 (1967); *but see Dehnart v. Waukesha Brewing Co.,* 21 Wis.2d 583, 124 N.W.2d 664 (1963).

In light of these considerations, we hold that, in an action for damages for breach of an employment contract, unemployment compensation benefits are not deductible by the employer in mitigation of damages.

Accordingly, we conclude the trial court erred in denying the first motion in limine and in instructing the jury to deduct unemployment compensation from defendant's contract damages.

### 2.

Buckley's second motion in limine requested that presentation of evidence of money earned from another employer during the contract term be foreclosed. He contends the trial court erred in denying that motion and in instructing the jury to deduct such amounts from any contract damages it awarded to him.

A party injured by a breach of contract has a duty to make reasonable efforts to mitigate the damages sustained. *Tull v. Gundersons, Inc.*, 709 P.2d 940 (Colo.1985). And, in an employment situation, if the discharged employee has actually received earnings from other employment during the term of the contract, damages may be reduced to the extent of the salary received. *Colorado School of Mines v. Neighbors*, 119 Colo. 399, 203 P.2d 904 (1949); *Smith v. City & County of Denver*, 39 Colo.App. 421, 569 P.2d 329 (1977).

Buckley argues, however, that the doctrine of mitigation of damages is inapplicable because he seeks wages due under the contract rather than damages for breach of the contract. We disagree.

Buckley's theory is essentially that of "constructive service," under which an employee discharged without cause before the expiration of the term of employment could disregard the employer's breach, hold himself or herself in readiness to serve, and sue on the contract for successive installments of wages as they accrue under the contract. Arguably, under this theory, mitigation of damages would be inapplicable because the employee was deemed to be in the constructive service of the employer.

However, the constructive service theory is now generally discredited because it is contrary to the sound policy of the mitigation of damages doctrine and because it permits a multiplicity of lawsuits where one would serve. Even in jurisdictions that still permit a discharged employee to bring successive actions for installments of wages, the doctrine of mitigation generally applies. *See* 4 A. Corbin, *Contracts* § 958 (1951).

The constructive service theory has not been adopted in Colorado. Our supreme court has held that an employee discharged without cause before the expiration of the term of employment has a choice of two remedies:

> [H]e may treat the contract as rescinded, and at once bring an action for the value of the services rendered; or he may treat the contract as continuing, and sue for a breach thereof, and recover his probable damages occasioned by the breach, or in some cases he may defer suit until the end of the term, and sue for the actual damage he has sustained....

> Under the remedy in the latter class of cases, *i.e.*, where the action is for breach of the contract, whether brought before or after the end of the term, the measure of damages is not the amount of wages stipulated in the contract for the entire term, but the actual loss, to be established by proof, although the amount of the agreed wages may be taken as the measure of damages ... He is bound to use reasonable efforts to secure labor elsewhere. If he has secured labor elsewhere, or by reasonable diligence might have done so, the amount received, or that might have been received, for such labor, is to be deducted from the amount of the damages occasioned by the breach of the contract sued upon.

*Saxonia Mining & Reduction Co. v. Cook*, 7 Colo. 569, 4 P. 1111 (1884).

A discharged employee's remedies under *Saxonia Mining* do not include treating the contract as continuing and suing for installments of wages as they accrue. Consequently, there is no basis for

the argument that mitigation is inapplicable. Moreover, even if a discharged employee can sue for successive installments of wages, the better rule is that mitigation applies. Accordingly, we conclude that the trial court did not err in denying the motion in limine or in instructing the jury on mitigation as to earnings from other employment during the contract period.

*Cherry v. A–P–A Sports, Inc.*, 662 P.2d 200 (Colo.App.1983), on which Buckley relies for support of his argument that mitigation is inapplicable, does not require a different result. *Cherry* is distinguishable on its facts.

There, the plaintiff had an employment contract for two years at a specified salary. At the end of the term, the employer had the option to extend the term for an additional two years. However, if the option were not exercised, the employer would pay the plaintiff $35,000. The employer did not extend the contract, but refused to pay the $35,000. In holding that mitigation did not apply, the court characterized the employer's promise to pay if the contract were not extended as a guaranteed payment of a debt. *See also Drews v. Denver Recycling Co.*, 727 P.2d 1121 (Colo.App. 1986).

Here, in contrast, Buckley's salary was not guaranteed. Despite his characterization of his claim, he was merely seeking damages for breach of contract, and accordingly, he had a duty to mitigate his damages.

### III.

Buckley contends that the trial court applied the wrong measure of damages for abuse of process in determining that $12,-000 of the total attorney fees of $17,930.35 were attributable to his defense against TCSI's abusive claims. Defendant argues that he was entitled to all fees in excess of the approximately $1,000 in attorney fees his expert witness testified defendant would have incurred had the case remained in county court. We disagree.

It is true that, in an action for malicious prosecution or abuse of process, a plaintiff may recover attorney fees incurred in defending against the earlier wrongful litigation by the defendant. *Bernstein v. Simon*, 77 Colo. 193, 235 P. 375 (1925); *Geijsbeek v. Martin*, 27 Colo. App. 316, 148 P. 921 (1915); *See also* Restatement (Second) of Torts § 671, comment c (1977).

However, the general rule is that in the absence of a contractual or statutory provision, attorney fees incurred in litigating a claim are not recoverable as an item of damages in a contract or tort action on that claim. *Buder v. Sartore*, 774 P.2d 1383 (Colo.1989). Moreover, a claimant in a malicious prosecution or abuse of process action can recover attorney fees incurred in defending against the prior wrongful litigation; however, under the general rule, he or she cannot recover attorney fees incurred in bringing the malicious prosecution or abuse of process action itself. *See* C. McCormick, *Damages* § 66 (1935); *see also* 54 C.J.S. *Malicious Prosecution* § 97 (1987).

Logically, the same rule should apply if the abuse of process claim is brought as a counterclaim to wrongful litigation rather than as a later separate action. Accordingly, under the general rule, although Buckley could recover attorney fees attributable to his defense against TCSI's wrongful litigation, he is not entitled to recover attorney fees attributable to the prosecution of his abuse of process claim,

Because Buckley is not entitled to all fees in excess of those he would have incurred in county court, we conclude that he has not shown that the trial court erred in attributing only $12,000 to his defense against TCSI's abusive claims. The trial court's judgment is presumed correct, and the burden of showing reversible error is on the party asserting it. *Anderson v. Colorado State Department of Personnel*, 756 P.2d 969 (Colo.1988). Defendant did not sustain his burden.

### IV.

Lastly, Buckley contends that he is entitled to attorney fees incurred in this appeal. We disagree.

Although Buckley has prevailed on the issues raised by TCSI in its appeal of the abuse of process judgment, we reject his argument that he is entitled to attorney fees incurred in defending against that appeal.

Cases holding that a party who is awarded attorney fees in the trial court is entitled to attorney fees incurred in successfully defending the judgment on appeal are inapplicable here. In those cases, the attorney fees awarded in the trial court were incurred in litigating the claims that were the subjects of the appeals. *See Buder v. Sartore, supra; Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979); *In re Conservatorship of Roth,* 804 P.2d 265 (Colo. App.1990).

 Here, as discussed above, the attorney fees awarded did not include fees incurred in litigating the abuse of process claim. Because Buckley was not entitled to attorney fees incurred in litigating the abuse of process claim in the trial court, he is not entitled to fees incurred in defending the abuse of process judgment on appeal.

Because Buckley has not prevailed on the wage claim issue raised in his cross-appeal, his argument that he is entitled to attorney fees if he should prevail on that issue are without merit. Because defendant was not improperly denied fees by the trial court, he is not entitled to fees incurred in his cross-appeal. *Cf. Carnal v. Dan Coleman, Inc.,* 727 P.2d 412 (Colo. App.1986); *Keeton v. Rike,* 38 Colo.App. 505, 559 P.2d 262 (1977) (party who is denied attorney fees by trial court is entitled to attorney fees incurred in successful appeal of denial of fees).

The judgment is affirmed as to the abuse of process and wage claims. That portion of the judgment relating to defendant's breach of contract claim is reversed, and the cause is remanded for a new trial on the issue of damages in conformity with the views herein expressed.

STERNBERG, C.J., and NEY, J., concur.