**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

————————————————

RICE'S LUCKY CLOVER HONEY,
LLC., a Colorado limited liability
company,

      Plaintiff/Counterclaim
Defendant - Appellant,

v.

JAMIE HAWLEY, an individual

      Defendant/Counterclaimant -
Appellee.

No. 16-1186
(D.C. No. 1:14-CV-00402-RPM)
(D. Colo.)

————————————————

**ORDER AND JUDGMENT**[*]

————————————————

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

————————————————

This appeal grew out of a confusing contract between a honey

business (Rice's Lucky Clover Honey, LLC) and its president (Mr. Jamie

Hawley). Both parties sued one another for breach of contract, with Rice

Honey also suing for breach of fiduciary duty.[1]

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and Tenth Cir. R. 32.1(A).

[1]    Rice Honey also asserted a claim for a declaratory judgment, but this claim is not involved in the appeal.

The district court awarded judgment as a matter of law to Mr. Hawley on Rice Honey's claims for breach of contract and breach of fiduciary duty. These rulings were correct.

The district court also awarded judgment as a matter of law to Mr. Hawley on his counterclaim for breach of contract. In our view, the district court should have let the jury decide this claim. Accordingly, we reverse the judgment for Mr. Hawley on his counterclaim for breach of contract. In connection with this counterclaim, the district court also held as a matter of law that a liquidated-damages clause was enforceable. Under state law, the enforceability of this clause should have been left for the jury to decide.

## I.     Background

The parties negotiated over the contract terms and exchanged multiple drafts. Rice Honey wanted to hire Mr. Hawley for one year and see how the relationship worked before deciding whether to continue. Mr. Hawley wanted a term longer than one year.

Rice Honey proposed a contract with a one-year term that could be renewed for up to three years. Mr. Hawley changed the language without alerting Rice Honey to the change. Rice Honey signed, thinking that it was signing its latest version. Rice Honey was wrong; the written contract contained indicia reflecting the wishes of both parties:

2

> [Mr.] Hawley's term of employment under this Agreement (such term of employment, as it may be extended or terminated, is herein referred to as the "Employment Term") shall be for a term commencing on the Effective Date and, unless terminated earlier as provided in Section 5 hereof, *ending on the third anniversary of the Effective Date (the "Original Employment Term") one (1) year period*; unless, at least sixty (60) days prior to the end of the original employment term Rice [Honey] or [Mr.] Hawley has notified the other in writing that the Employment Term shall terminate at the end of that current term. If not so terminated, then the Employment Term shall be automatically extended, subject to earlier termination as provided in Section 5 hereof, for an additional two (2) year period (the "Additional Terms").

Appellant's App'x, vol. V, at 846 (emphasis added). In one place, the contract stated that the employment term would end on "the third anniversary of the [e]ffective [d]ate." *Id.* In the same sentence, however, the contract stated that the employment term would be a "one (1) year period." *Id.*

Rice Honey soon became disenchanted with Mr. Hawley and notified him that the employment would not be renewed after one year. Mr. Hawley viewed this notification as a premature termination, theorizing that the base term was three years rather than one year. This disagreement led to the litigation.

After Rice Honey presented its trial evidence, Mr. Hawley moved for judgment as a matter of law on Rice Honey's claims. The district court granted the motion, awarding judgment to Mr. Hawley not only on Rice Honey's claims but also on the counterclaim. On the counterclaim, the

3

court awarded Mr. Hawley $412,000 ($250,000 for liquidated damages and $162,000 for actual damages). In these rulings, the court held for the first time that even if the contract had only a one-year term, Rice Honey would be obligated to pay the amount specified in the contract for a termination without cause. Rice Honey appealed.

## II.   Standard of Review and the Applicable Substantive Law

We engage in de novo review of a district court's grant of judgment as a matter of law, applying the same legal standards that governed in district court. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). Under these standards, we can uphold the district court's ruling only if all of the evidence points one way and precludes a reasonable inference supporting Rice Honey. *See id.*

In this diversity case, we consider the evidence based on Colorado's substantive law. *See McKissick v. Yuen*, 618 F.3d 1177, 1184 (10th Cir. 2010).[2] In defining Colorado's substantive law, we are guided primarily by the opinions of the Colorado Supreme Court. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1294 (10th Cir. 2017).

## III.   Rice Honey's Claim for Breach of Contract

Rice Honey argues that its contract claim should have been submitted to the jury. For this argument, Rice Honey theorizes that

---

[2]   The parties agree on the applicability of Colorado's substantive law.

4

- the jury could conclude that there was no meeting of the minds and

- the contract was ambiguous.

But these theories would not create a jury question on Rice Honey's contract claim.

In district court, Rice Honey had based its contract claim on Mr. Hawley's continued work for Liberty Institute, false representations to Walmart and Sam's Club, and dishonest and disloyal conduct. But Rice Honey's appellate arguments would not support these theories of liability. For example, in defending its contract claim, Rice Honey argues that the jury could have found that there was no meeting of the minds. But if there was no meeting of the minds, Rice Honey could not have prevailed on its contract claim. Similarly, Rice Honey argues that the alleged contract was ambiguous regarding the duration of the employment term and the effect of the "termination without cause" provision. But ambiguity of those terms would not have affected the viability of Rice Honey's contract claim. In the absence of any other pertinent argument, we affirm the district court's award of judgment as a matter of law to Mr. Hawley on Rice Honey's contract claim.

## IV. Rice Honey's Claim for Breach of Fiduciary Duty

The district court also properly granted judgment as a matter of law to Mr. Hawley on Rice Honey's claim for breach of fiduciary duty.

5

**A. Rice Honey had to establish four elements.**

On this claim, Rice Honey needed to show that (1) Mr. Hawley had acted as a fiduciary, (2) Mr. Hawley had breached a fiduciary duty, (3) Rice Honey had incurred damages, and (4) these damages had been caused by Mr. Hawley's breach of a fiduciary duty. *See Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106, 1109-1100 (Colo. 1987) (en banc).

**B. Rice Honey alleges two theories of breach of fiduciary duty.**

Rice Honey alleges two theories of how Mr. Hawley breached a fiduciary duty: (1) by making material misrepresentations to Walmart and Sam's Club, and (2) by continuing to work for Liberty after December 31, 2012.

**C. The evidence did not support liability for breach of fiduciary duty based on Mr. Hawley's alleged misrepresentations to Walmart and Sam's Club.**

The first theory involves Mr. Hawley's alleged misrepresentations to Walmart and Sam's Club. This theory fails as a matter of law based on the absence of any resulting damages.

The alleged misrepresentations appeared in a letter from Mr. Hawley to Walmart and Sam's Club: "After an extensive review by an outside firm regarding our pricing and terms to existing customers in like classes of trade, it was brought to our attention that we are in violation of the federal law passed in 1936 to outlaw price discrimination." Appellant's App'x,

6

vol. V, at 898.[3] Rice Honey presented evidence that this statement was false because there had not been an outside review of pricing. For the sake of argument, we may assume without deciding that Mr. Hawley acted as a fiduciary and that this misrepresentation breached a fiduciary duty to Rice Honey. Even with that assumption, this theory would fail as a matter of law because Rice Honey did not incur any damages.

Under Colorado law, Rice Honey must prove "the fact of damages or injury" with "a reasonable degree of persuasiveness." *W. Cities Broad., Inc. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993) (en banc). This proof must go "beyond a mere possibility or speculation." *Gibbons v. Ludlow*, 304 P.3d 239, 246 (Colo. 2013) (en banc). Generalized opinions regarding lost sales are insufficient in the absence of an explanation. *See Roberts v. Holland & Hart*, 857 P.2d 492, 497 (Colo. App. 1993) (holding that an affiant's projection of net profit was too speculative without an explanation for how the total had been calculated).

At trial, the vice-president of operations for Rice Honey testified that there had been no injury from Mr. Hawley's misrepresentations:

> Q.    Let's move down a little further. Did he--here's the next question. It says here on Item B, "Intentionally engaged

---

[3]    Rice Honey also alleges that Mr. Hawley engaged in other "actions and omissions that . . . caused [Rice Honey] to lose substantial sales at their biggest customer, WalMart/Sam's Club." Appellant's Opening Br. at 12. But Rice Honey makes no further reference to other alleged actions and omissions.

7

in conduct which is demonstrably and materially injurious to Rice." Okay. Then it goes into various conditions and so forth like this, talking about fraud or dishonesty or theft against Rice, okay. And your testimony earlier, sir, had to do with this Robinson/Patmen [sic] communication on the pricing. And the question I have for you is: was there a demonstrable and material injury for Rice?

A.    No, sir.

Q.    Did you lose any sales because of that?

A.    No, sir.

Q.    Did you lose any profits?

A.    No, sir.

Q.    Okay. Did you lose a customer?

A.    No, sir.

Q.    Okay. So there really was no injury there, was there?

A.    You're correct.

Appellant's App'x, vol. IV, at 593; *see also id*. at 562-63 (similar testimony by the same individual).[4]

The only contrary evidence consisted of testimony by a co-owner of Rice Honey, who expressed a thought or feeling that the company had incurred damages. The co-owner's thought or feeling regarding lost sales constitutes speculation, which is insufficient under Colorado law to prove

---

[4]    Rice Honey points out that this individual also testified regarding lost sales in 400 Walmart stores. But Rice Honey did not present any evidence tying the lost sales to Mr. Hawley's alleged misrepresentations.

8

the fact of damages. *See Nevin v. Bates*, 347 P.2d 776, 777-78 (Colo. 1959).

Considering the testimony in the light most favorable to Rice Honey, we conclude that no reasonable jury could have found damages from Mr. Hawley's alleged misrepresentations to Walmart and Sam's Club. Thus, Rice Honey's first theory fails as a matter of law.

**D.    The economic-loss rule prevents recovery for breach of fiduciary duty on Rice Honey's second theory.**

Rice Honey's second theory is based on Mr. Hawley's alleged work for Liberty after December 31, 2012. At that point, Mr. Hawley was serving as the president of Rice Honey. For the sake of argument, we may assume without deciding that Rice Honey has satisfied each of the four elements for this theory. Nonetheless, this theory would fail as a matter of law under Colorado's economic-loss rule.

The economic-loss rule allows a tort recovery only if the underlying duty is independent of a duty arising out of a contract. *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (applying Colorado law); *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262-63 (Colo. 2000) (en banc). Here the alleged duty to stop working for Liberty was directly tied to the underlying contract.

In district court, Mr. Hawley did not invoke the economic-loss rule. Thus, the threshold issue is whether we can consider Mr. Hawley's newly

presented argument as an alternative basis to affirm the ruling. We enjoy discretion to affirm on alternative grounds. *Hernandez v. Starbuck*, 69 F.3d 1089, 1093-94 (10th Cir. 1995).

In determining whether to exercise this discretion, we consider (1) whether the ground was fully briefed here and in district court, (2) whether our decision would involve only questions of law, and (3) whether the parties had a fair opportunity to develop the factual record. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). The first factor cuts both ways, but the second and third factors support use of our discretion to consider Mr. Hawley's new argument on the economic-loss rule.

The first factor cuts both ways because the economic-loss rule is fully briefed on appeal but was not raised in district court.

The second factor supports consideration of the issue, for the applicability of the economic-loss rule is a question of law. *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009); *accord Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 106 (3d Cir. 2001) (stating that the economic-loss doctrine involves a question of law); *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 10 (Utah 2003) ("The district court's interpretation and application of the economic loss doctrine is a question of law . . . .").

The third factor also supports consideration because the issue does not involve any factual questions. Without a factual component to the

10

issue, Rice Honey would suffer no prejudice if we were to consider the issue in the first instance.

In light of the second and third factors, we exercise our discretion to consider this issue. *See United States v. Damato*, 672 F.3d 832, 845 (10th Cir. 2012) (considering potential affirmance on an issue raised sua sponte based on the second and third factors).

We ultimately conclude that the economic-loss rule applies. Under this rule, the underlying duty must arise from a source independent of the contract. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262-63 (Colo. 2000) (en banc). And even when the underlying duty would arise in the absence of the contract, the duty is not considered independent if it is memorialized in the contract. *See Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (applying Colorado law).

In its reply brief, Rice Honey argues that the economic-loss rule does not apply to claims involving a breach of fiduciary duty. We disagree, for the Colorado Court of Appeals has applied the economic-loss rule to claims for breach of fiduciary duty. *See Casey v. Colo. Higher Educ. Ins. Benefits All. Tr.*, 310 P.3d 196, 204 (Colo. App. 2012) ("Any tort claim for breach of fiduciary duty that the employees attempt to interject into this case concerning the trustees would be barred by operation of the economic loss rule."); *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d

534, 540 (Colo. App. 2011) (stating that a "fiduciary duty between contracting parties" does not necessarily create a special relationship that "trumps the economic loss rule").

Rice Honey argues that if the economic-loss rule applies to claims for breach of fiduciary duty, the Colorado Supreme Court must have missed the issue in *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989) (en banc), and *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 737 P.2d 1106 (Colo. 1987) (en banc). But Colorado appellate courts "[']normally decide only questions presented by the parties.'" *Zeke Coffee, Inc. v. Pappas-Alstad P'ship*, 370 P.3d 261, 269 (Colo. App. 2015) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)). Thus, the Colorado Supreme Court has expressly declined to consider an economic-loss argument that the parties had not presented. *A.O. Smith Harvestore Prods., Inc. v. Kallsen*, 817 P.2d 1038, 1039 (Colo. 1991) (en banc).

We have no indication that the parties raised the economic-loss rule in *Jet Courier Service, Inc.* or in *Rupert*. Thus, we have no reason to think that the Colorado Supreme Court missed the issue. Instead, we can reasonably assume that none of the parties invoked the economic-loss rule in these cases. If they didn't, the Colorado Supreme Court would not be expected to address the issue. Our case is different, for Mr. Hawley has raised the economic-loss rule on appeal.

12

In our view, Mr. Hawley's new argument is supported by Colorado's treatment of the economic-loss rule. Colorado courts have identified certain special relationships that automatically trigger an independent duty of care that supports tort liability even when the parties have entered into a contract. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000) (en banc). These special relationships often "entail a fiduciary relationship." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 540 (Colo. App. 2011). But "not every fiduciary relationship implicates a risk of damages for which contract law cannot provide a remedy." *Id*. Here the employment contract provided a suitable remedy for Mr. Hawley's alleged work for Liberty after December 31, 2012.

The contract arguably required Mr. Hawley to wrap up his consulting work for Liberty by December 31, 2012, and the jury could reasonably infer that continued consulting work for Liberty in 2013 would constitute a breach of contract. For the sake of argument, we can even assume that a contractual breach would also entail a breach of fiduciary duty. However the cause of action is framed, the contract would provide a perfectly suitable remedy. Thus, the economic-loss rule prevents recovery under Rice Honey's second theory of a breach of fiduciary duty.

13

## V.     Mr. Hawley's Counterclaim for Breach of Contract

The district court awarded judgment as a matter of law to Mr.
Hawley on his counterclaim for breach of contract. For two reasons, this
ruling was erroneous:

1.     A reasonable jury could have found that Mr. Hawley had
       materially breached the contract prior to Rice Honey's alleged
       breach.

2.     The contract was ambiguous regarding the duration of the
       employment term.[5]

---

[5]     Rice Honey also argues that a jury could reasonably find that there
was no meeting of the minds. We disagree.

Rice Honey contends that it was unaware of Mr. Hawley's revisions
before signing the contract. If Rice Honey signed before the contract was
altered, the alteration might arguably render the contract unenforceable.
But Rice Honey does not suggest that it signed before the contract was
altered. Instead, Rice Honey alleges that it signed the contract unaware
that the latest draft had already been altered by Mr. Hawley.

Even if Rice Honey signed the contract unaware of an alteration, the
contract would not be vitiated, for the failure to read what one signs does
not ordinarily prevent enforcement. *See Rasmussen v. Freehling*, 412 P.2d
217, 219 (Colo. 1966) (stating that parties may not avoid enforcement of a
contract just because they had failed to read the contract). An exception
exists when the parties were mutually mistaken about the contract. *Kuper
v. Scroggins*, 257 P.2d 412, 413-14 (Colo. 1953) (en banc); *see Smith v.
Whitlow*, 268 P.2d 1031, 1035 (Colo. 1954) (en banc). But Rice Honey
does not suggest that Mr. Hawley was mistaken about the contract terms.
Thus, the signed contract would bind the parties even if Rice Honey had
not read the latest version before signing.

**A.    A reasonable jury could have found that Mr. Hawley had materially breached the contract.**

The district court erred in entering judgment as a matter of law to Mr. Hawley on his counterclaim for breach of contract, for a reasonable jury could have found that Mr. Hawley had materially breached the contract prior to Rice Honey's alleged breach.

Mr. Hawley alleges that Rice Honey breached the contract by prematurely terminating the employment without paying the amount specified in the contract for early termination. But Rice Honey could avoid performance if Mr. Hawley had previously failed to substantially perform his own contractual duties. *See Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 641 (Colo. App. 1999). This principle would create a jury issue, for a reasonable jury could have found that Mr. Hawley had already committed a material breach by continuing to work for Liberty after December 31, 2012.[6]

Here the existence of a contractual breach by Mr. Hawley turns on two questions:

1.    Did the contract prevent Mr. Hawley from working for Liberty after December 31, 2012?

2.    If the contract prevented such work, did Mr. Hawley continue to work for Liberty after December 31, 2012?

---

[6]    Rice Honey makes this argument on appeal with respect to Mr. Hawley's counterclaim, but not with respect to Rice Honey's own contract claim.

15

The jury could reasonably answer "yes" to both questions, finding a contractual breach from Mr. Hawley's continued work for Liberty after December 31, 2012.

First, the jury could reasonably find that the contract prevented Mr. Hawley from working for Liberty after December 31, 2012. The contract did not generally prevent Mr. Hawley from working for another employer while working for Rice Honey.[7] But the contract arguably suggested that Mr. Hawley's right to work for Liberty might be limited to approximately 3½ months. The contract was signed by the parties on September 13, 2012 and stated: "[Rice Honey] recognizes that [Mr.] Hawley will need to spend modest amounts of time until December 31, 2012 at Liberty Institute completing the shutdown of the consulting aspects of his business." Appellant's App'x, vol. V, at 846. By stating that Mr. Hawley would need to continue working for Liberty until December 31, 2012, the contract could have been implying that Mr. Hawley was to stop working for Liberty by that date.

Second, the jury could reasonably find that Mr. Hawley had continued to work for Liberty after December 31, 2012. For example, Rice Honey presented evidence that in 2013, Mr. Hawley had organized

---

[7]    Mr. Hawley could not work for another employer involved in the honey business. But Rice Honey does not suggest that Liberty was in the honey business.

16

interviews and researched resumes for candidates hoping to land a position with Liberty as Chief Operating Officer. In addition, six emails between Mr. Hawley and Liberty management suggested that Mr. Hawley was continuing to work for Liberty in a managerial position after December 31, 2012:

1. One email (April 18, 2013) referred to Mr. Hawley as part of the management team and notified him of an upcoming meeting.

2. A second email (April 19, 2013) contained Mr. Hawley's response, which reflected help in planning the meeting and in giving input on the matters to be discussed.

3. A third email (May 2, 2013) consisted of Mr. Hawley's transmission of an offer to hire a Chief Operating Officer for Liberty.

4. A fourth email (May 3, 2013) thanked Mr. Hawley for his hard work.

5. A fifth email (May 13, 2013) referred to Mr. Hawley's participation in a meeting to "review 2013 KPIs and create new ones for 2014." Appellant's App'x, vol. VI, at 970.

6. A sixth email (May 15, 2013) referred to Mr. Hawley's participation in a management meeting.

The resulting issue is whether a jury could reasonably find the fact of damage from Mr. Hawley's alleged work for Liberty after December 31, 2012. In our view, such a finding would have been reasonable. Rice Honey continued to pay Mr. Hawley after December 31, 2012. Part of these continued payments could constitute damages, for the jury could reasonably infer that Rice Honey had paid more than it would have if it had

17

known that Mr. Hawley was continuing to serve Liberty in a managerial capacity. Thus, the existence of damages constituted a factual issue for the jury to decide.

In sum, a reasonable jury could find that Mr. Hawley had breached the contract and that this breach of contract had caused damages. Thus, the district court erred in entering judgment as a matter of law for Mr. Hawley on his counterclaim for breach of contract. In our view, the jury could reasonably find that Mr. Hawley had materially breached the contract before Rice Honey prematurely terminated the contract. Such a finding could have excused Rice Honey from continued performance under the contract.

**B.    A jury could also have reasonably found that Rice Honey had not breached the contract.**

A jury could also have reasonably found that Rice Honey had not breached the contract because the duration of the contract was ambiguous.

In interpreting the contract, we must determine whether it was ambiguous. *See Boyer v. Karakehian*, 915 P.2d 1295, 1300 (Colo. 1996) (en banc). The contract was ambiguous if it was susceptible to two or more reasonable interpretations. *B&B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998) (en banc). If the contract was ambiguous, interpretation would involve an issue of fact. *See Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 381 (Colo. 2000) (en banc)

18

("Interpretation of the intent of the parties in an ambiguous contract becomes an issue of fact for the trial court to decide in the same manner as other disputed factual issues.").

The district court ruled that the contract is ambiguous on how long it was to last. We agree based on Paragraph (1) of the contract. What is a term "ending on the third anniversary of the Effective Date . . . one (1) year period"? The phrase appears to be a nonsensical result of the parties' failure to fully revise the contractual term of employment. Mr. Hawley wanted a three-year term; Rice Honey wanted a one-year term. At the end of the negotiation process, the parties apparently ended up with language suggesting a duration of both one year and three years. In this respect, the contract language was ambiguous.[8]

Resolution of that ambiguity turns on the parties' intent, which is a question of fact. *See Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 381 (Colo. 2000) (en banc). A jury might reasonably agree with Mr. Hawley, finding that the contract term was three years. Or, a jury might reasonably agree with Rice Honey, finding that the term was one year.

Depending on whether the contract was one year or three years, Rice Honey could let the contract come to a natural end by timely exercising its

---

[8]    The district court called the contract language "strange" and "meaningless." Appellant's App'x, vol. VII, at 1117-18.

right not to renew the employment term. Or, Rice Honey could terminate the contract (with or without cause) by ending Mr. Hawley's employment prior to expiration of the term.

If the term was only one year, Rice Honey could have provided Mr. Hawley with notice of nonrenewal at least 60 days before the term was to end. Rice Honey provided such notice. So, if the term was only one year, there would not have been a "termination without cause" or a contractual breach by Rice Honey. Instead, the contract would simply have expired. But if the contract term was three years, Rice Honey's notice of nonrenewal could be considered a termination without cause because the term would have had two more years.

Mr. Hawley argues that even if the contract were one year, there would have been a "termination." For this argument, Mr. Hawley points to a snippet of testimony by Rice Honey's vice-president of operations:

> Q.　(by Mr. Burg) But what I'm getting at is, you know, we construe contracts I think by what the words are that are used, okay, and this says "terminated." Now, even if you were to terminate this thing, even if we construe this contract the way that Rice wants to construe it, which I suppose is that it is a contract terminable at the end of a one-year term with 60 days notice. I assume that's your position, right?
>
> A.　Correct.
>
> Q.　That is a termination, right?
>
> A.　Correct.

20

Appellant's App'x, vol. IV, at 585. But, as the district court explained, the vice-president's understanding did not matter if the "termination without cause" provision had been unambiguous. *See* Appellant's App'x, vol. VII, at 1119-20 (the district court's explanation that the word "termination" is unambiguous and that "Rice's understanding" is immaterial because the court could interpret the provision for "termination without cause" as a matter of law).[9]

---

[9]    The district court apparently changed its view of the case after hearing the testimony of Rice Honey's vice-president of operations. On cross-examination, the vice-president testified that Rice Honey had terminated Mr. Hawley without cause. After excusing the jury, the district court told counsel that "in light of [the vice-president's] testimony, I think he undercut your case entirely." Appellant's App'x, vol. IV, at 633. And when Rice Honey rested its case the next day, the district court commented, "Plaintiff rests, all right," and turned to Mr. Hawley's motion under Fed. R. Civ. P. 50. Appellant's App'x, vol. VII, at 1115-16. In this motion, Mr. Hawley did not address his counterclaim, for he had not even presented a case. Nonetheless, the district court sua sponte granted judgment as a matter of law to Mr. Hawley on his counterclaim. *See* p. 3, above. In explaining this ruling, the district court noted that it was "somewhat taken aback by what [it had] heard is the evidence in this case and particularly, as respect to [Rice Honey's attorney] and also as respecting [Rice Honey's vice-president of operations]." Appellant's App'x, vol. VII, at 1117.

If the district court had intended to rely on its understanding of the vice-president's testimony, this reliance would have been misguided. Rice Honey's vice-president and co-owner testified extensively about the decision not to renew Mr. Hawley's employment. For example, the vice-president testified that in the days before nonrenewal, Mr. Hawley repeatedly asked if his employment term would be renewed. In addition, Rice Honey's co-owner testified that he had told Mr. Hawley orally and in writing that his employment would not be renewed. Almost two weeks

The district court was correct in viewing the vice-president's testimony as immaterial in light of the unambiguous language in the contract. *See Denver Found. v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1126 (Colo. 2007) (en banc) (stating that "intent must be determined from contract language itself, and an unambiguous document cannot be explained by extrinsic evidence so as to dispute its plain meaning"). But we disagree with the district court's interpretation of the provisions for termination and nonrenewal.

The contract unambiguously addresses payment obligations if Rice Honey were to terminate the contract before it would otherwise expire. These obligations would vary depending on whether the termination is with cause or without cause. But neither kind of termination took place if the contract term had been one year. If the term were only one year, Rice Honey would simply have exercised its contractual right not to renew the contract, letting it expire. Expiration of the contract would not have been a termination by either party.

later, Mr. Hawley responded, expressing surprise at the reasons given "not to renew [his] contract." Appellant's App'x, vol. IV, at 570.

The testimony by Rice Honey's vice-president and co-owner could support a finding that the parties treated Mr. Hawley's termination as a nonrenewal (a termination with at least 60 days' notice and continued payment through the one-year term rather than an "early" termination under the contract). Thus, the district court could not grant judgment as a matter of law to Mr. Hawley based on a snippet of the vice-president's testimony.

As a result, the existence of a contractual breach turns on the duration of the term, one year or three years. Because the duration of the contract is ambiguous, the district court should have allowed the jury to decide whether Rice Honey had breached the contract.[10]

## VI. Guidance Regarding Damages for Mr. Hawley's Counterclaim for Breach of Contract

The parties disagree about issues related to the damages that Mr. Hawley could obtain if he prevails on his counterclaim for breach of contract. The disagreement involves the duty to mitigate damages, the enforceability of a liquidated-damages clause, and the availability of both liquidated damages and the sum specified in the contract. Because these issues may reappear on remand, we provide the district court with some guidance. *See Fletcher v. United States*, 730 F.3d 1206, 1214 (10th Cir. 2013).

### A. Mr. Hawley had no duty to mitigate damages.

The existence of a duty to mitigate damages involves a question of law. *See Cherry v. A-P-A Sports, Inc.*, 662 P.2d 200, 202 (Colo. App. 1983) (deciding the existence of a duty to mitigate as a matter of law). On this question, we conclude that Mr. Hawley did not bear a duty to mitigate damages.

---

[10] On remand, Mr. Hawley could prevail on his counterclaim for breach of contract only if the jury determines that the duration is three years rather than one year.

23

## 1. The common law did not require mitigation of damages.

In urging a duty to mitigate damages, Rice Honey relies on the common law. Under Colorado's common law, a party injured from a contractual breach must ordinarily make a reasonable effort to mitigate damages. *Tull v. Gundersons, Inc.*, 709 P.2d 940, 946 (Colo. 1985) (en banc). Thus, when a contract is breached, the amount avoided through mitigation should ordinarily be deducted from the eventual award. *Saxonia Mining & Reduction Co. v. Cook*, 4 P. 1111, 1113 (Colo. 1884). But there is no duty to make a deduction when the contract specifies the amount owed to the injured party. *See Drews v. Denver Recycling Co.*, 727 P.2d 1121, 1124 (Colo. App. 1986); *Cherry*, 662 P.2d at 202. Here the amount owed was specified in the contract, precluding a common-law duty to mitigate.

Rice Honey relies on *Technical Computer Services, Inc. v. Buckley*, 844 P.2d 1249, 1255 (Colo. App. 1992). *Buckley* addressed mitigation in different circumstances. There an employee was terminated and successfully sued for breach of the employment contract. *Buckley*, 844 P.2d at 1249, 1251. On appeal, the employee argued that his award should not be reduced by the amount earned elsewhere. *Id.* at 1255. The Colorado Court of Appeals rejected this argument, reasoning that the employee could not (1) treat the employment contract as continuing and (2) sue for wages as they accrued. The court reasoned that recovery for continued wages

24

would be contrary to the policy of mitigation and permit a multiplicity of lawsuits. *Id* at 1255-56.

The court distinguished *Cherry v. A-P-A Sports, Inc.*, 662 P.2d 200 (Colo. App. 1983). *Buckley*, 844 P.2d at 1256. In *A-P-A Sports*, the mitigation doctrine did not apply because the employer had promised to pay a specific amount upon nonrenewal of the employment term. *Id.* That principle was inapplicable in *Buckley* because there the payment had not been guaranteed. *Id.*

Our case closely resembles *A-P-A Sports*. Here the amount owed to Mr. Hawley had allegedly been guaranteed upon early termination without cause. Mr. Hawley's theory is that he was entitled to the guaranteed payment regardless of whether he obtained employment elsewhere, for the contract called for payment of a set amount. As Mr. Hawley points out, the contract stated that Rice Honey's early termination without cause would require payment of the base salary for one year ($162,000), along with $250,000 in liquidated damages. Thus, *Buckley* would not support a deduction from his potential recovery on the contract claim.

In sum, Colorado's common law did not create a duty for Mr. Hawley to mitigate damages.

### 2. Rice Honey does not allege that the contract would independently create a duty to mitigate.

A potential issue could have arisen about the effect of the contract. The contract stated that the measure of damages for Mr. Hawley was "subject to the mitigation provisions set forth below." Appellant's App'x, vol. V, at 851. But there were no mitigation provisions "set forth below."

Rice Honey preemptively argues that this set of provisions did not vitiate the common-law duty to mitigate damages. This argument assumes that the common law created a duty to mitigate. But we have elsewhere concluded that no such duty existed at common law. As a result, the contract does not bear on the duty to mitigate.[11]

### B. The enforceability of the liquidated-damages clause involved a fact-issue for the jury to decide.

The contract contained a liquidated-damages clause that required Rice Honey to pay Mr. Hawley $250,000 upon a termination without cause.[12] The district court held that this clause was enforceable as a matter

---

[11] Rice Honey does not argue on appeal that the contract independently created a duty to mitigate.

[12] If the "termination without cause" provision applied, it would also require Rice Honey to pay one year's base salary ($162,000). One could reasonably view this payment as part of the liquidated damages. But both parties have treated the liquidated damages as $250,000, with the additional $162,000 as actual damages. We address below the related issue of whether Mr. Hawley might be able to recover both liquidated damages ($250,000) and actual damages ($162,000).

26

of law. In our view, however, the enforceability of the liquidated-damages clause involved a fact-issue for the jury to decide.

Liquidated-damages provisions are enforceable if they reasonably estimate the amount of actual damages and do not constitute a penalty. *Rohauer v. Little*, 736 P.2d 403, 410 (Colo. 1987) (en banc). Unless the contract "on its face establishes that the stipulated liquidated damages are so disproportionate to any possible loss as to constitute a penalty, the party challenging the liquidated damages provision bears the burden of proving that fact." *Id.*; *see also Chisholm v. Reitler*, 352 P.2d 794, 796 (Colo. 1960) (en banc) (stating that the burden of proof falls on the party characterizing a liquidated-damages clause as a penalty).

The pertinent factors for the enforceability of a liquidated damages provision are

1. whether the parties intended to liquidate damages,

2. whether the amount of liquidated damages, when viewed as of the time that the contract was made, was a reasonable estimate of the presumed actual damages that the breach would cause, and

3. whether it was difficult at that time to ascertain the amount of actual damages that would result from a breach.

*Rohauer*, 736 P.2d at 410. The enforceability of a liquidated-damages clause involves a question of fact unless the contract shows on its face that the liquidated damages constitute a penalty. *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006) (en banc).

27

The district court decided as a matter of law that the liquidated-damages clause was enforceable without hearing any evidence on the issue. Rice Honey never had an opportunity to support its position with evidence. The district court erred by prematurely deciding this fact-issue prior to the presentation of evidence on the relationship between the liquidated-damages amount and the possible loss.

**C.    If Mr. Hawley prevails on his counterclaim, he may be entitled to both liquidated damages and payment for a specified debt.**

Liquidated damages may be recoverable in lieu of actual damages. *See* 11 Joseph M. Perillo, *Corbin on Contracts: Damages* § 58.9, at 446 (2005). Thus, an election between the two is ordinarily required. *See Stewart v. Blanning*, 677 P.2d 1382, 1384 (Colo. App. 1984) (stating that the doctrine of election of remedies "is invoked where remedial rights sought in a given situation are so inconsistent that the assertion of one necessarily repudiates the assertion of the other"). But payment for a specified debt is treated differently, for it is awardable regardless of the employee's opportunity to mitigate damages. *See Drews v. Denver Recycling Co.*, 727 P.2d 1121, 1124 (Colo. App. 1986) (holding that no duty to mitigate existed to collect payments required under a terminated employment contract); *Cherry v. A-P-A Sports, Inc.*, 662 P.2d 200, 202 (Colo. App. 1983) (holding that no duty to mitigate existed when the

28

employer had promised to pay a specified amount upon nonrenewal of the contract); *see also* Part VI(A)(1), above.

Rice Honey lumps together the claims for liquidated damages and payment of a specified debt, pointing out that both are premised on a breach of contract. We disagree with this approach. If Mr. Hawley prevails, Rice Honey would owe money for a specified debt arising out of a contractual obligation. Thus, Mr. Hawley would be entitled to the contractual payment of the specified debt even if he were to receive liquidated damages.

Because our case involves rights to payment of a debt and liquidated damages, Mr. Hawley could receive both if (1) the jury concludes that the liquidated damages do not constitute a penalty and (2) Mr. Hawley ultimately prevails on his counterclaim.

## VII. Conclusion

The district court awarded judgment as a matter of law to Mr. Hawley on Rice Honey's claims. We affirm this aspect of the district court's ruling. But we reverse and remand for a new trial on

- Mr. Hawley's counterclaim for breach of contract and
- the enforceability of the liquidated-damages clause.

Entered for the Court,

Robert E. Bacharach
Circuit Judge

29